**ORIGINAL**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------x
:
**In re** :    **Chapter 11**
:
**BASIC ENERGY** :    **Case No. 16-12320 (KJC)**
**SERVICES, INC.,** *et al.*,[1] :
:    **Joint Administration Requested**
**Debtors.** :
:    Re: Docket No. 8
------------------------------------------------------x

### INTERIM ORDER (I) AUTHORIZING DEBTORS
### (A) TO OBTAIN POSTPETITION FINANCING PURSUANT TO
### 11 U.S.C. §§ 105, 361, 362, 363(b), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) AND
### 364(e) AND (B) TO USE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363,
### (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES
### PURSUANT TO 11 U.S.C. §§ 361, 362, 363, 364 AND 507(b), AND (III) SCHEDULING
### FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(b) AND (c)

Upon the motion (the "**Motion**"),[2] dated October 25, 2016, of Basic Energy Services, Inc.

("**Basic**" or the "**Borrower**") and the direct and indirect subsidiaries of the Borrower that are

debtors and debtors-in-possession in the above-captioned cases (collectively, the "**Guarantors**";

the Guarantors collectively with the Borrower, the "**Debtors**" or the "**Loan Parties**"), pursuant

to sections 105, 361, 362, 363(b), 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e)

and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Basic Energy Services, Inc. (1194); Basic Energy Services GP, LLC (1197); Basic Energy Services LP, LLC (1195); Basic Energy Services, L.P. (1819); Basic ESA, Inc. (2279); Chaparral Service, Inc. (6424); SCH Disposal, L.L.C. (8335); Sledge Drilling Corp. (3140); Admiral Well Service, Inc. (4899); Basic Marine Services, Inc. (4888); JS Acquisition LLC (9500); Permian Plaza, LLC (3425); Maverick Coil Tubing Services, LLC (3281); First Energy Services Company (4993); JetStar Holdings, Inc. (4248); Xterra Fishing & Rental Tools Co. (7818); Maverick Solutions, LLC (2876); LeBus Oil Field Service Co. (3125); Acid Services, LLC (0455); Taylor Industries, LLC (7037); Maverick Stimulation Company, LLC (4572); Globe Well Service, Inc. (4275); JetStar Energy Services, Inc. (5237); Platinum Pressure Services, Inc. (8379); Maverick Thru-Tubing Services, LLC (1902); MCM Holdings, LLC (0949); MSM Leasing, LLC (9182); The Maverick Companies, LLC (4170). The Debtors' mailing address is 801 Cherry Street, Suite 2100, Fort Worth, Texas 76102.

[2] Capitalized terms used, but not defined herein, shall have the meanings set forth in the DIP Documents (as defined below).

Code"), and Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Bankruptcy Rules**"), seeking, among other things:

(a)     authorization for the Borrower to obtain secured postpetition financing (the "**DIP Financing**"), and for the Guarantors to guaranty the Borrower's obligations in connection with the DIP Financing, consisting of a superpriority secured multiple delayed-draw term loan facility (the "**DIP Facility**") in an aggregate principal amount of $90 million, with U.S. Bank National Association, acting as administrative agent and collateral agent (in such capacities, the "**DIP Agent**"), and the DIP Lenders (as defined below), all on the terms and conditions set forth in this Interim Order and the DIP Documents (each as defined below), pursuant to which DIP Facility the Borrower is authorized, on an interim basis, to borrow from the DIP Lenders an aggregate principal amount on the Closing Date (as defined in the DIP Credit Agreement (as defined below)) not to exceed $30 million;

(b)     authorization for the Loan Parties to execute, deliver, and enter into the Superpriority Secured Debtor-in-Possession Credit Agreement to be dated on or around October [●], 2016, among the Borrower, the Guarantors party thereto, the lenders from time to time party thereto (collectively, the "**DIP Lenders**" and, together with the DIP Agent, the "**DIP Secured Parties**"), and the DIP Agent, substantially in the form attached to the Motion as <u>Exhibit B</u> (as amended, supplemented or otherwise modified from time to time in accordance with the terms hereof and thereof, the "**DIP Credit Agreement**" and, together with the schedules and exhibits attached thereto and all agreements, documents, instruments and/or amendments executed and delivered in connection therewith, including, without limitation, the Security Agreement, dated as of the Closing Date, among the Loan Parties and the DIP Agent (as amended, supplemented or otherwise modified from time to time in accordance with the terms hereof and thereof, the "**DIP Security Agreement**"), the "**DIP Documents**") and the other DIP Documents and to perform all such other and further acts as may be required in connection with the DIP Documents;

(c)     the granting of adequate protection to the Prepetition ABL Agent and the Prepetition ABL Lenders (each as defined below) under or in connection with (i) that certain Amended and Restated Credit Agreement, dated as of November 26, 2014, by and among the Borrower, the subsidiary loan parties party thereto and the lenders from time to time party thereto (collectively, in such capacities, the "**Prepetition ABL Lenders**") and Bank of America, N.A., as administrative agent, swing line lender and an L/C issuer (in such capacities, the "**Prepetition ABL Agent**" and, together with the Prepetition ABL Lenders, the "**Prepetition ABL Secured Parties**") (as amended, supplemented or otherwise modified prior

2

to the date hereof, the "**Prepetition ABL Credit Agreement**") and (ii) that certain Second Amended and Restated Security Agreement, dated as of February 26, 2016, between the Borrower, the Prepetition ABL Agent and subsidiaries of the Borrower party thereto (as amended, restated, supplemented or otherwise modified prior to the date hereof, the "**Prepetition ABL Security Agreement**" and, collectively with the Prepetition ABL Credit Agreement, and the mortgages and all other agreements and documentation executed in connection therewith, the "**Prepetition ABL Loan Documents**"), whose liens on and security interests in the ABL Facility Priority Collateral (as defined in the ICA (as defined below)) and the ABL Postpetition Collateral (as defined below) will be senior to the DIP Liens (as defined below);

(d)     the granting of adequate protection to the Prepetition Term Loan Agent and the Prepetition Term Loan Lenders (each as defined below) under or in connection with (i) that certain Term Loan Credit Agreement, dated as of February 17, 2016, by and among the Borrower and the other subsidiaries of the Borrower party thereto, the lenders from time to time party thereto (collectively, in such capacities, the "**Prepetition Term Loan Lenders**") and U.S. Bank National Association, as Administrative Agent (in such capacity, the "**Prepetition Term Loan Agent**" and, together with the Prepetition Term Loan Lenders, the "**Prepetition Term Loan Secured Parties**" and together with the Prepetition ABL Secured Parties, the "**Prepetition Secured Parties**") (as amended, restated, supplemented or otherwise modified prior to the date hereof, the "**Prepetition Term Loan Credit Agreement**"), (ii) that certain Security Agreement, entered into in connection with the Prepetition Term Loan Credit Agreement and dated as of February 26, 2016 (as amended, restated, supplemented or otherwise modified prior to the date hereof, the "**Prepetition Term Loan Security Agreement**"), (iii) that certain Term Loan Escrow Agreement, entered into in connection with the Prepetition Term Loan Credit Agreement and dated as of February 26, 2016 (as amended, restated, supplemented or otherwise modified prior to the date hereof, the "**Prepetition Term Loan Escrow Agreement**") and (iv) such other mortgages and all other agreements and documentation executed in connection with the Prepetition Term Loan Credit Agreement (collectively, with the Prepetition Term Loan Credit Agreement, the Prepetition Term Loan Security Agreement and the Prepetition Term Loan Escrow Agreement, the "**Prepetition Term Loan Documents**" and, together with the Prepetition ABL Loan Documents, the "**Existing Agreements**"), whose liens and security interests in respect of the Debtors are being primed by the DIP Liens (as defined below);

(e)     subject to the restrictions set forth in the DIP Documents and this Interim Order, authorization for the Loan Parties to continue to use Cash Collateral (as defined below) and all other Prepetition Collateral (as defined below) in which any of the Prepetition Secured Parties have an interest, and the granting of adequate protection to the Prepetition Secured Parties with respect to, *inter alia*, such use of their Cash Collateral and the other Prepetition Collateral;

3

(f)     subject to certain challenge rights of parties in interest set forth herein, approval of certain stipulations by the Debtors with respect to the Existing Agreements and the liens and security interests arising therefrom;

(g)     the grant of superpriority administrative claims pursuant to section 364(c)(1) of the Bankruptcy Code to the DIP Secured Parties payable from, and secured by liens pursuant to section 364(c)(2) and 364(c)(3) of the Bankruptcy Code and priming liens pursuant to section 364(d) of the Bankruptcy Code on, all prepetition and postpetition property of the Loan Parties' estates (other than the Excluded Property (as defined in the DIP Documents)) and all proceeds thereof (including, subject only to and effective upon entry of the Final Order (as defined below), any Avoidance Proceeds (as defined below)), subject only to (i) the Carve-Out and (ii) solely with respect to the ABL Facility Priority Collateral and the ABL Postpetition Collateral, the Prepetition ABL Liens and the Prepetition ABL Adequate Protection Liens (as each is defined below);

(h)     subject only to and effective upon entry of the Final Order, the waiver of the Debtors' right to surcharge the Prepetition Collateral and the Collateral (as defined below) pursuant to section 506(c) of the Bankruptcy Code and any right of the Debtors under the "equities of the case" exception in section 552(b) of the Bankruptcy Code;

(i)     modification of the automatic stay to the extent set forth herein and in the DIP Documents;

(j)     pursuant to Bankruptcy Rule 4001, that an interim hearing (the "**Interim Hearing**") on the Motion be held before this Court to consider entry of an order granting the Motion on an interim basis (this "**Interim Order**"); and

(k)     that this Court schedule a final hearing (the "**Final Hearing**") to be held within forty (40) calendar days of the entry of this Interim Order to consider entry of a final order (the "**Final Order**") approving the relief granted herein on a final basis and authorizing the Borrower to borrow from the DIP Lenders under the DIP Documents the remainder of the amount of the DIP Financing in the manner and at the times set forth in the DIP Facility and the Guarantors to guaranty all obligations owing to the DIP Lenders under the DIP Documents;

and due and appropriate notice of the Motion, the relief requested therein and the Interim Hearing having been served by the Debtors on (i) the Office of the United States Trustee for the District of Delaware ("**U.S. Trustee**"), (ii) the holders of the 30 largest unsecured claims against the Debtors on a consolidated basis, (iii) Davis Polk & Wardwell LLP and Potter Anderson & Corroon LLP as counsel to certain of the DIP Lenders and the Prepetition Term Loan Lenders,

4

(iv) Lowenstein Sandler LLP as counsel to the DIP Agent and the Prepetition Term Loan Agent, (v) Fried, Frank, Harris, Shriver & Jacobson LLP and Blank Rome LLP as counsel to the ad hoc group of holders of the Basic's 7.75% Senior Notes due 2019 and 7.75% Senior Notes due 2022 (the "**Ad Hoc Group**"), (vi) Vinson & Elkins LLP and Morris, Nichols, Arsht & Tunnell LLP as counsel to the Prepetition ABL Agent, (vii) the Internal Revenue Service, (viii) the Securities and Exchange Commission, (ix) the Environmental Protection Agency, (x) the United States Attorney's Office for the District of Delaware, (xi) the office of the attorneys general for the states in which the Debtors operate, (xii) all parties known by the Debtors to hold or assert a lien on any asset of any Debtor, (xiii) all relevant state taxing authorities, (xiv) all of the Debtors' landlords, and owners and/or operators of premises at which any of the Debtors inventory and/or equipment is located, (xv) any party that has requested notice pursuant to Bankruptcy Rule 2002, and (xvi) any other party entitled to notice pursuant to Local Rule 9013-1(m); and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion; and the Interim Hearing having been held by this Court on October 26, 2016; and the relief requested in the Motion being in the best interests of the Debtors, their creditors and their estates and all other parties-in-interest in the Cases (as defined below); and the Court having determined that the relief requested in the Motion is necessary to avoid immediate and irreparable harm; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon the record made by the Debtors in the Motion, the *Declaration of Adam Keil in Support of Motion of Debtors for Interim and Final Orders (I) Authorizing Debtors (A) to Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 363(b), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and (B) to Use Cash Collateral Pursuant to 11 U.S.C. § 363, (II) Granting Adequate Protection to Prepetition*

5

Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363, 364 and 507(b) and (III) Scheduling

Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c) (D.I. 9) (the "**Keil Declaration**"),

the *Declaration of David C. Johnston in Support of the Debtors' Chapter 11 Petitions and First*

*Day Relief* (D.I. 14) (the "**Johnston Declaration**"), and at the Interim Hearing and after due

deliberation and sufficient cause appearing therefor;

   IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

   1. *Disposition.*  The relief requested in the Motion is granted on an interim basis in

accordance with the terms of this Interim Order.  Any objections to the Motion with respect to

the entry of this Interim Order that have not been withdrawn, waived or settled, and all

reservations of rights included therein, are hereby denied and overruled on the merits.  This

Interim Order shall become effective immediately upon its entry.

   2. *Jurisdiction.*  This Court has core jurisdiction over the Cases (as defined below),

this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and

1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

   3. *Notice*.  Proper, timely, adequate and sufficient notice of the Motion has been

provided in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local

Bankruptcy Rules, and no other or further notice of the Motion, the relief requested at the Interim

Hearing or the entry of this Interim Order shall be required, except as set forth in paragraph 36

below. The interim relief granted herein is necessary to avoid immediate and irreparable harm to

the Debtors and their estates pending the Final Hearing.

   4. *Debtors' Stipulations*.  Without prejudice to the rights of any party in interest (but

subject to the limitations thereon contained in paragraphs 18 and 19 below), the Debtors admit,

stipulate and agree that:

(a)     (i) as of the date (the "**Petition Date**") of the filing of the Debtors' chapter 11 cases (the "**Cases**"), the Debtors were justly and lawfully indebted and liable to (A) the Prepetition ABL Secured Parties, without defense, counterclaim or offset of any kind, in the aggregate face amount of not less than $51,062,000 in respect of letters of credit issued by certain of the Prepetition ABL Lenders pursuant to, and in accordance with the terms of, the Prepetition ABL Credit Agreement and the other Prepetition ABL Loan Documents, plus accrued and unpaid interest thereon and fees, expenses (including any attorneys', accountants', appraisers' and financial advisors' fees, in each case, that are chargeable or reimbursable under the Prepetition ABL Loan Documents), charges, indemnities and other obligations incurred in connection therewith (whether arising before or after the Petition Date) as provided in the Prepetition ABL Loan Documents (collectively, the "**Prepetition ABL Secured Debt**"), which Prepetition ABL Secured Debt has been guaranteed on a joint and several basis by all of the Guarantors and (B) the Prepetition Term Loan Secured Parties, without defense, counterclaim or offset of any kind, in the aggregate principal amount of $164,175,000 in respect of loans made pursuant to, and in accordance with the terms of, the Prepetition Term Loan Credit Agreement and the other Prepetition Term Loan Documents, plus the Applicable Premium (as defined in the Prepetition Term Loan Credit Agreement) in the amount of not less than $58,000,000, accrued and unpaid interest thereon and fees, expenses (including any attorneys', accountants', appraisers' and financial advisors' fees, in each case, that are chargeable or reimbursable under the Prepetition Term Loan Documents), charges, indemnities and other obligations incurred in connection therewith (whether arising before or after the Petition Date) as provided in the Prepetition Term Loan Documents (collectively, the "**Prepetition Term Loan Secured Debt**" and, together with the Prepetition ABL Secured Debt, the "**Prepetition**

**Secured Debt**"), which Prepetition Term Loan Secured Debt has been guaranteed on a joint and several basis by all of the Guarantors; (ii) the Prepetition Secured Debt constitutes the legal, valid and binding obligations of the Borrower and the Guarantors, enforceable in accordance with its terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code); and (iii) no portion of the Prepetition Secured Debt or any payments made to the Prepetition Secured Parties or applied to or paid on account of the obligations owing under the Existing Agreements prior to the Petition Date is subject to any contest, attack, rejection, recovery, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action or other challenge of any nature under the Bankruptcy Code or applicable non-bankruptcy law;

(b)     the liens and security interests granted to the Prepetition ABL Secured Parties (the "**Prepetition ABL Liens**") pursuant to and in connection with the Prepetition ABL Loan Documents: (i) are valid, binding, perfected, enforceable, first-priority liens and security interests in the ABL Facility Priority Collateral; (ii) were granted to, or for the benefit of, the Prepetition ABL Secured Parties for fair consideration and reasonably equivalent value; (iii) are not subject to avoidance, recharacterization, subordination, recovery, attack, effect, counterclaim, defense or Claim under the Bankruptcy Code or applicable non-bankruptcy law; and (iv) as of the Petition Date, are subject and subordinate only to valid, perfected and unavoidable liens to the extent that such liens are senior to the liens of the Prepetition ABL Agent on the Prepetition Collateral;

(c)     the liens and security interests granted to the Prepetition Term Loan Secured Parties (the "**Prepetition Term Loan Liens**" and, together with the Prepetition ABL Liens, the "**Prepetition Liens**") pursuant to and in connection with the Prepetition Term Loan

Credit Agreement and the other Prepetition Term Loan Documents: (i) are legal, valid, binding, perfected, enforceable, first-priority liens and security interests in the Term Loan Priority Collateral (as defined in the ICA) (the "**Term Loan Priority Collateral**" and, together with the ABL Facility Priority Collateral, the "**Prepetition Collateral**"); (ii) are legal, valid, binding, perfected, enforceable, second-priority liens and security interests in the ABL Facility Priority Collateral; (iii) were granted to, or for the benefit of, the Prepetition Term Loan Secured Parties for fair consideration and reasonably equivalent value; (iv) are not subject to avoidance, recharacterization, subordination (other than as provided in the ICA), recovery, attack, effect, counterclaim, defense or Claim under the Bankruptcy Code or applicable non-bankruptcy law; and (v) as of the Petition Date are subject and subordinate only to (A) in the case of the ABL Facility Priority Collateral, the liens and security interests in favor of the Prepetition ABL Secured Parties and (B) valid, perfected and unavoidable liens to the extent that such liens are senior to the liens of the Prepetition Term Loan Agent on the Prepetition Term Loan Collateral;

(d)    none of the Prepetition Secured Parties control the Debtors or their properties or operations, have authority to determine the manner in which any Debtor's operations are conducted or are control persons or insiders of the Debtors by virtue of any of the actions taken with respect to, in connection with, related to or arising from any of the Existing Agreements;

(e)    the Debtors and their estates have no claims or causes of action against, or with respect to, the Prepetition Secured Parties;

(f)    effective as of the date of entry of this Interim Order, the Debtors hereby absolutely and unconditionally release and forever discharge and acquit the Prepetition Secured Parties and their respective Representatives (as defined below) (collectively, the "**Released**

9

**Parties**") from any and all obligations and liabilities to the Debtors (and their successors and assigns) and from any and all claims, counterclaims, demands, debts, accounts, contracts, liabilities, actions and causes of action arising prior to the Petition Date (collectively, the "**Released Claims**") of any kind, nature or description, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, arising in law or equity or upon contract or tort or under any state or federal law or otherwise, arising out of or related to (as applicable) any of the Existing Agreements, the obligations owing and the financial obligations made thereunder, the negotiation thereof and of the deal reflected thereby, and the obligations and financial obligations made thereunder, in each case that the Debtors at any time had, now have or may have, or that their successors or assigns hereafter can or may have against any of the Released Parties for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time on or prior to the date of this Interim Order, whether such Released Claims are matured or unmatured or known or unknown;

(g)     that certain Intercreditor Agreement dated as of February 26, 2016 among the Prepetition ABL Agent, the Prepetition Term Loan Agent and the grantors party thereto (as amended, supplemented or otherwise modified prior to the date hereof, the "**ICA**"), is binding and enforceable against the Borrower and the Guarantors in accordance with its terms, and the Borrower and the Guarantors are not entitled to take any action that would be contrary to the provisions thereof; and

(h)     all cash, securities or other property of the Loan Parties (and the proceeds therefrom) as of the Petition Date, including, without limitation, all cash, securities or other property (and the proceeds therefrom) and other amounts on deposit or maintained by the Loan Parties in any account or accounts with any depository institution (collectively, the "**Depository**

10

**Institutions**"), were subject to rights of set-off and valid, perfected, enforceable, first priority liens under the Existing Agreements and applicable law, for the benefit of the Prepetition ABL Secured Parties or the Prepetition Term Loan Secured Parties, as applicable. All proceeds of the Prepetition Collateral (including cash on deposit at the Depository Institutions as of the Petition Date, securities or other property, whether subject to control agreements or otherwise, in each case that constitutes Prepetition Collateral) are "cash collateral" of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (the "**Cash Collateral**").

5.     *Findings Regarding the DIP Financing and Cash Collateral.*

(a)     Good and sufficient cause has been shown for the entry of this Interim Order.

(b)     The Loan Parties have an immediate need to obtain the DIP Financing and continue to use the Prepetition Collateral (including Cash Collateral) to permit, among other things, the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures, to satisfy other working capital and operational needs, to pay the Adequate Protection Payments (as defined below) and to fund administration of the Cases, including, without limitation, payment of Professional Fees (as defined below). The access of the Loan Parties to sufficient working capital and liquidity through the use of Cash Collateral and other Prepetition Collateral, incurrence of new indebtedness under the DIP Documents are necessary and vital to the preservation and maintenance of the going concern values of the Loan Parties and to a successful reorganization of the Loan Parties.

(c)     The Loan Parties are unable to obtain financing on more favorable terms from sources other than the DIP Lenders under the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Loan Parties are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without the Loan Parties granting to the DIP Agent and the DIP Lenders, subject to the Carve-Out, the DIP Liens and the DIP Superpriority Claims (as defined below) and incurring the Adequate Protection Obligations, in each case, under the terms and conditions set forth in this Interim Order and in the DIP Documents.

(d)     Based on the Motion, the declarations filed in support of the Motion, and the record presented to the Court at the Interim Hearing, the terms of the DIP Financing, the terms of the Adequate Protection Obligations granted to the Prepetition Secured Parties and the terms on which the Loan Parties may continue to use the Prepetition Collateral (including Cash Collateral) pursuant to this Interim Order and the DIP Documents are fair and reasonable, reflect the Loan Parties' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(e)     To the extent such consent is required, the Prepetition Secured Parties have consented or are deemed under the ICA to have consented to the Loan Parties' use of Cash Collateral and the other Prepetition Collateral, and the Loan Parties' entry into the DIP Documents in accordance with and subject to the terms and conditions in this Interim Order and the DIP Documents.

(f)     The DIP Financing, as well as the terms of the Adequate Protection Obligations and Adequate Protection Liens, and the use of the Prepetition Collateral (including

Cash Collateral) have been negotiated in good faith and at arm's length among the Loan Parties, the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties and all of the Loan Parties' obligations and indebtedness arising under, in respect of, or in connection with, the DIP Financing and the DIP Documents, including, without limitation, (i) all loans made to and guarantees issued by the Loan Parties pursuant to the DIP Documents (collectively, the "**DIP Loans**") and (ii) any "**Obligations**" (as defined in the DIP Credit Agreement) of the Debtors owing to the DIP Agent, any DIP Lender or any of their respective affiliates, in accordance with the terms of the DIP Documents, including any obligations, to the extent provided for in the DIP Documents, to indemnify the DIP Agent or the DIP Lenders and to pay any fees, expenses (including any attorneys', accountants', appraisers' and financial advisors' fees that are chargeable or reimbursable under the DIP Documents), amounts, charges, costs, indemnities and other obligations that are chargeable or reimbursable under this Interim Order, the Final Order or the DIP Documents (the foregoing in clauses (i) and (ii) collectively, the "**DIP Obligations**"), shall be deemed to have been extended by the DIP Agent and the DIP Lenders and their respective affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Agent and the DIP Lenders (and the successors and assigns thereof) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.  The Prepetition Secured Parties have acted in good faith regarding the Loan Parties' continued use of the Prepetition Collateral (including the Cash Collateral) to fund the administration of the Loan Parties' estates and continued operation of their businesses (including the incurrence and payment of the Adequate Protection Obligations and the granting

of the Adequate Protection Liens), in accordance with the terms hereof, and the Prepetition Secured Parties (and the successors and assigns thereof), and shall be entitled to the full protection of section 363(m) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(g)    The Prepetition Secured Parties are entitled to the adequate protection provided in this Interim Order as and to the extent set forth herein pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code.  Based on the Motion and on the record presented to the Court, the terms of the proposed adequate protection arrangements and of the use of the Prepetition Collateral (including the Cash Collateral) are fair and reasonable, reflect the Loan Parties' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of Cash Collateral; provided, however, that nothing in this Interim Order or the other DIP Documents shall (x) be construed as the affirmative consent by any of the Prepetition Secured Parties for the use of Cash Collateral, other than on the terms set forth in this Interim Order and in the context of the DIP Financing authorized by this Interim Order, (y) be construed as a consent by any party to the terms of any other financing or any other lien encumbering the Prepetition Collateral (whether senior or junior), or (z) prejudice, limit or otherwise impair the rights of any of the Prepetition Secured Parties, subject to any applicable provisions of the ICA, to seek new, different or additional adequate protection or assert the interests of any of the Prepetition Secured Parties.

(h)    The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the Local Bankruptcy Rules. Absent granting the relief set forth in this Interim Order, the Loan Parties' estates will be immediately and irreparably harmed.  Consummation of the DIP Financing and the use of

14

Prepetition Collateral, including Cash Collateral, in accordance with this Interim Order and the DIP Documents are therefore in the best interests of the Loan Parties' estates and consistent with the Loan Parties' exercise of their fiduciary duties.

6. *Authorization of the DIP Financing and the DIP Documents.*

(a)    The Loan Parties are hereby authorized to execute, enter into and perform all obligations under the DIP Documents.  The Borrower is hereby authorized to forthwith borrow money pursuant to the DIP Credit Agreement, and the Guarantors are hereby authorized to guaranty the Borrower's obligations with respect to such borrowings, up to an aggregate principal amount equal to $30 million under the DIP Facility (plus interest, fees, prepayment premiums, expenses (including professional fees and expenses) and other amounts, in each case, as provided for in the DIP Documents), subject to any limitations on borrowing under the DIP Documents, which shall be used for all purposes permitted under the DIP Documents (and subject to the terms and conditions set forth herein and therein), and for other general corporate purposes of, the Loan Parties, including the payment of expenses of administration in the Cases and the Adequate Protection Obligations.

(b)    In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized and directed to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements), and to pay all fees that may be reasonably required or necessary for the Loan Parties' performance of their obligations under or related to the DIP Financing, including, without limitation:

(i)    the execution and delivery of, and performance under, each of the DIP Documents;

RLF1 15549534V.1

(ii)    the execution and delivery of, and performance under, one or more amendments, waivers, consents or other modifications to and under the DIP Documents, in each case, in such form as the Loan Parties, the DIP Agent and the requisite DIP Lenders may agree with, where practicable, prior notice of three business days for substantive amendments to the Creditors' Committee (as defined below) and the U.S. Trustee, it being understood that no further approval of the Court shall be required for authorizations, amendments, waivers, consents or other modifications to and under the DIP Documents (and any fees and other expenses (including any attorneys', accountants', appraisers' and financial advisors' fees), amounts, charges, costs, indemnities and other obligations paid in connection therewith) that do not shorten the maturity of the extensions of credit thereunder or increase the aggregate commitments or the rate of interest payable thereunder;

(iii)    the non-refundable payment to the DIP Agent or the DIP Lenders, as the case may be, of all fees, including, without limitation, any closing fee, commitment fee, exit fee, prepayment fee or agency fee (which fees shall be, and shall be deemed to have been, approved upon entry of this Interim Order and upon payment thereof, shall not be subject to any contest, attack, rejection, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action or other challenge of any nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise, by any party) and any amounts due (or that may become due) in respect of the indemnification obligations, in each case referred to in the DIP Credit Agreement (and in any separate letter agreements between any or all Loan Parties, on the one hand, and the DIP Agent and/or DIP Lenders, on the other, in connection with the DIP Financing) and the costs and expenses as may be due from time to time, including, without limitation, fees and expenses of the professionals retained by any

16

of the DIP Agent or DIP Lenders, in each case, as provided for in the DIP Documents, without the need to file retention motions or fee applications or to provide notice to any party; and

(iv)    the performance of all other acts required under or in connection with the DIP Documents, including the granting and perfection of the DIP Liens and the DIP Superpriority Claims as permitted herein and therein.

(c)    Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute valid, binding and unavoidable obligations of the Loan Parties, enforceable against each Loan Party party thereto in accordance with the terms of the DIP Documents and this Interim Order.   No obligation, payment, transfer or grant of security under the DIP Documents or this Interim Order to the DIP Agent and/or the DIP Lenders shall be stayed, restrained, voidable or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 548 or 549 of the Bankruptcy Code, any applicable Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or other similar state statute or common law), or subject to any defense, reduction, setoff, recoupment, recharacterization, subordination (except as provided herein), disallowance, impairment, cross-claim, claim or counterclaim.

7.    *DIP Superpriority Claims.*

(a)    Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed superpriority administrative expense claims against the Loan Parties (without the need to file any proof of claim) with, except as provided in this Interim Order, priority over any and all administrative expenses, diminution in value claims (including all Adequate Protection Claims) and all other claims against the Loan Parties, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all

17

administrative expenses of the kind specified in sections 503(b) and 507(b) (including all 507(b) Claims (as defined below)) of the Bankruptcy Code and any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 365, 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (including the Adequate Protection Claims), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims (the **"DIP Superpriority Claims"**) shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which DIP Superpriority Claims shall be payable from and have recourse to all pre- and postpetition property of the Loan Parties and all proceeds thereof, including, without limitation, any and all cash and Cash Collateral of the Loan Parties (excluding the Loan Parties' claims and causes of action under sections 502(d), 544, 545, 547, 548 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code (collectively, **"Avoidance Actions"**), but, subject only to and effective upon entry of the Final Order, including any proceeds or property recovered, unencumbered or otherwise from Avoidance Actions, whether by judgment, settlement or otherwise (**"Avoidance Proceeds"**)), subject only to payment of the Carve-Out. The DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise. Notwithstanding the foregoing, the DIP Superpriority Claims shall not be payable from or have recourse to the ABL Facility Priority Collateral or the ABL Postpetition Collateral unless and until the Prepetition ABL Secured Debt has been satisfied in full in cash and all Letters of Credit (as defined in the Prepetition ABL Credit Agreement) have been terminated or Cash Collateralized in Full (as

defined below) or the Prepetition ABL Secured Parties have agreed in writing to a different treatment of the Prepetition ABL Secured Debt and all Letters of Credit.

(b)    For purposes hereof, the "**Carve-Out**" is an amount equal to the sum of (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code and section 3717 of title 31 of the United States Code, (ii) all reasonable and documented fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code in an amount not to exceed $25,000, (iii) to the extent ultimately allowed by the Court, all accrued and unpaid claims for fees, costs, disbursements and expenses incurred by persons or firms retained by the Debtors, or by the official committee of unsecured creditors in the Cases, if any (the "**Creditors' Committee**") (but excluding fees and expenses of any professionals employed individually by members of the Creditors' Committee and any restructuring fee, sale fee, transaction fee or other success fee of any investment banker or financial advisor of the Debtors or the Creditors' Committee), whose retention is approved by the Bankruptcy Court pursuant to sections 327, 328, 363 (solely with respect to AP Services, LLC), or 1103 of the Bankruptcy Code (collectively, the "**Professional Persons**," and the fees, costs and expenses of the Professional Persons, the "**Professional Fees**"), to the extent such Professional Fees are incurred at any time on or prior to the Trigger Date (as defined below) regardless of when such fees are allowed by the Bankruptcy Court and (iv) any Professional Fees of the Professional Persons incurred after the Trigger Date and allowed by the Bankruptcy Court at any time, whether before or after the Trigger Date, whether by interim order, procedural order or otherwise, in an amount not to exceed $1.0 million in the aggregate (the "**Post-Trigger Date Carve-Out Cap**") (the obligations of the Debtors with respect to the Carve-Out, the "**Carve-Out Obligations**");

19

provided that nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement or compensation described in clauses (i), (ii), (iii) or (iv) above, on any grounds. For the avoidance of doubt, subject to clauses (i) and (ii) above, only Professional Persons shall be entitled to payment from the funds constituting the Carve-Out; provided that the DIP Agent, the Prepetition Term Loan Agent and the Prepetition ABL Agent shall be entitled to gain possession of the funds constituting the Carve-Out after payment of the fees and expenses of Professional Persons that are payable from the Carve-Out and allowed on a final basis by the Court and paid in full.

(c)    For purposes hereof, the "**Trigger Date**" shall mean the earlier of:  (i) the first business day after the occurrence of an Event of Default (as defined in the DIP Credit Agreement) and delivery (including via email) by the DIP Lenders of notice thereof (the "**Carve-Out Notice**") to the Borrower's lead restructuring counsel (and, upon receipt, Borrower's lead restructuring counsel shall promptly deliver such Carve-Out Notice to the U.S. Trustee), or (ii) the Maturity Date (as defined in the DIP Credit Agreement).

(d)    On the Trigger Date, the Debtors shall be required to transfer from their accounts (other than the ABL Segregated Cash Collateral Account (as defined below)) to a segregated account (the "**Carve-Out Account**") not subject to the control of the DIP Agent an amount equal to the Post-Trigger Date Carve-Out Cap plus an amount equal to the aggregate unpaid fees, costs and expenses described in clauses (i)-(iii) of paragraph 7(b) above, in each case as determined by a good faith estimate of the applicable Professional Person. The proceeds on deposit in the Carve-Out Account shall be available first to satisfy the Carve-Out Obligations, and (1) the DIP Agent shall not sweep or foreclose on cash of the Debtors necessary to fund the Carve-Out Account and (2) the Prepetition ABL Agent (solely to the extent of any funds from

20

accounts constituting ABL Facility Priority Collateral or ABL Postpetition Collateral, respectively, transferred to the Carve-Out Account), the Prepetition Term Loan Agent and the DIP Agent shall each have a security interest in any residual interest in the Carve-Out Account available following satisfaction in full of all the Carve-Out Obligations.

(e)     For the avoidance of doubt, the Carve-Out Obligations shall be senior to any obligations or claims arising under or relating to (including any liens securing such obligations or claims) the DIP Loan, the Prepetition ABL Credit Agreement and the Prepetition Term Loan Credit Agreement, including, without limitation, any administrative or superpriority claims and all forms of adequate protection liens or security interests (it being understood and agreed that the Carve-Out shall, as among the Prepetition Secured Parties, be allocated and deemed allocated for all purposes 16.67% to the ABL Facility Priority Collateral and 83.33% to the Term Loan Priority Collateral); *provided* that, notwithstanding the foregoing and for the avoidance of doubt, such allocation shall not affect the funding of the Carve-Out, and all Collateral (save and except for Cash Collateral in the ABL Segregated Cash Collateral Account) shall be available to fund the Carve-Out; *provided* further that, for the avoidance of doubt, upon the funding of the Carve-Out, the DIP Secured Parties and the Prepetition Secured Parties shall have no further obligation whatsoever to fund or otherwise ensure payment of fees, costs and expenses payable from the Carve-Out.  Notwithstanding the foregoing, prior to the Trigger Date, the Carve-Out shall not be reduced by the payment of Professional Fees allowed at any time by the Bankruptcy Court.

(f)     Notwithstanding the foregoing, (x) the Carve-Out shall not include, apply to or be available for any fees or expenses incurred by any party in connection with (a) the investigation (other than, prior to the Trigger Date, as permitted under paragraph 19 of this

Interim Order), initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation, or assert any defense or counterclaim, against any of the DIP Lenders, the DIP Agent, the Prepetition Term Loan Lenders, the Prepetition Term Loan Agent, the Prepetition ABL Lenders or the Prepetition ABL Agent, each in such capacity, and their respective agents, attorneys, advisors or representatives, including challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset to, the obligations (including, without limitation, any obligations arising from or related to the Applicable Premium (as defined in the Prepetition Term Loan Credit Agreement)) and the liens and security interests granted under the DIP Documents or the Existing Agreements (whether in such capacity or otherwise), including, in each case, without limitation, for lender liability or pursuant to section 105, 506(c), 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; (b) attempts to modify any of the rights granted to the DIP Lenders, the DIP Agent or the Prepetition Secured Parties; (c) attempts to prevent, hinder or otherwise delay any of the DIP Lenders' or the DIP Agent's assertion, enforcement or realization upon any DIP Collateral (as defined below) or Term Loan Priority Collateral in accordance with the DIP Documents and the Final Order other than to seek a determination that an Event of Default has not occurred or is not continuing; (d) attempts to prevent, hinder or otherwise delay any of the Prepetition Secured Parties assertion, enforcement or realization upon any of the ABL Facility Priority Collateral or ABL Postpetition Collateral in accordance with the Existing Agreements, this Interim Order and the Final Order; or (e) paying any amount on account of any claims arising before the commencement of the Cases unless such payments are approved by an order of the Bankruptcy Court, and (y) prior to the Trigger Date, the Carve-

Out shall not be reduced by the payment of Professional Fees allowed at any time by the Bankruptcy Court.

8. *DIP Liens.* As security for the DIP Obligations, effective and perfected upon the date of this Interim Order and without the necessity of the execution, recordation of filings by the Loan Parties of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, any notation of certificates of title for a titled good, or the possession or control by the DIP Agent of, or over, all owned or hereafter acquired assets and property of the Loan Parties and the proceeds thereof, other than the Excluded Property (the foregoing, together with any other property identified in clauses (a), (b) and (c) below being referred to collectively, as the "**Collateral**"), the following security interests and liens are hereby granted to the DIP Agent for its own benefit and the benefit of the DIP Lenders, subject only to the payment of the Carve-Out (all such liens and security interests granted to the DIP Agent, for its benefit and for the benefit of the DIP Lenders, pursuant to this Interim Order and the DIP Documents, the "**DIP Liens**"):

(a) First Lien On Unencumbered Property. Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all tangible and intangible pre- and postpetition property of each Loan Party, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date, is not subject to a valid, perfected and non-avoidable lien (collectively, "**Unencumbered Property**"), including, without limitation, any and all unencumbered cash of the Loan Parties (whether maintained with the DIP Agent or otherwise) and any investment of such cash and cash collateral, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date (including, without limitation, post-petition

23

intercompany claims against the Loan Parties and their non-Debtor affiliates), contracts, litigation claims, properties, plants, fixtures, machinery, equipment, general intangibles, documents, instruments, securities, chattel paper, interests in leaseholds, real properties, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, capital stock of subsidiaries, wherever located, and the proceeds, products, rents and profits of the foregoing, whether arising under section 552(b) of the Bankruptcy Code or otherwise, of all the foregoing, in each case other than: (i) the Excluded Property, but including any proceeds of the Excluded Property that do not otherwise constitute Excluded Property; and (ii) Avoidance Actions, but subject only to and effective upon entry of the Final Order, including Avoidance Proceeds; provided that such security interest in and lien on ABL Postpetition Collateral shall be subject and subordinate to the Prepetition ABL Adequate Protection Liens on the terms provided for herein;

   (b) <u>Liens Priming Prepetition Term Loan Secured Parties' Liens</u>.  Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected priming security interest in and lien upon all pre- and postpetition property of each Loan Party (including, without limitation, any and all cash and cash collateral (whether maintained with the DIP Agent or otherwise) and any investment of such cash and cash collateral, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date (including, without limitation, post-petition intercompany claims against the Loan Parties and their non-Debtor affiliates), contracts, properties, plants, fixtures, machinery, equipment, general intangibles, documents, instruments, securities, chattel paper, interests in leaseholds, real properties, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, capital stock of subsidiaries,

24

wherever located, and the proceeds, products, rents and profits of the foregoing), whether now existing or hereafter acquired, subject to the Prepetition Term Loan Liens, which shall be senior in all respects to the Prepetition Term Loan Liens and the Prepetition Term Loan Adequate Protection Liens but shall be junior and subordinate to, solely with respect to the ABL Facility Priority Collateral and the ABL Postpetition Collateral, the Prepetition ABL Liens and the Prepetition ABL Adequate Protection Liens;

(c)    Liens Junior to Certain Other Liens.  Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected security interest in and lien upon all tangible and intangible pre- and postpetition property of each Loan Party subject to valid, binding and unavoidable liens on the Petition Date (including, without limitation, any and all cash and cash collateral of the Loan Parties (whether maintained with the DIP Agent or otherwise) and any investment of such cash and cash collateral, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date (including, without limitation, post-petition intercompany claims against the Loan Parties and their non-Debtor affiliates), contracts, properties, plants, fixtures, machinery, equipment, general intangibles, documents, instruments, securities, chattel paper, interests in leaseholds, real properties, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, capital stock of subsidiaries, wherever located, and the proceeds, products, rents and profits of the foregoing, whether arising under section 552(b) of the Bankruptcy Code or otherwise, in each case other than (x) the Excluded Property, but including any proceeds of Excluded Property that do not constitute Excluded Property and (y) the Avoidance Actions), junior and subordinate to (i) solely with respect to the ABL Facility Priority Collateral and the ABL Postpetition Collateral, the Prepetition ABL Liens

25

and the Prepetition ABL Adequate Protection Liens, (ii) any valid, perfected and unavoidable liens (other than the Prepetition Liens) in existence immediately prior to the Petition Date to the extent such liens are senior or *pari passu* to the Prepetition Liens, and (iii) any such valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, in each case (ii) and (iii) above other than the security interests and liens securing the Prepetition Term Loan Secured Debt (including, without limitation, the Prepetition Term Loan Adequate Protection Liens); *provided*, that nothing in the foregoing clauses (ii) and (iii) shall limit the rights of the DIP Secured Parties under the DIP Documents to the extent such liens are not permitted thereunder; and

(d)     Liens Senior to Certain Other Liens.   The DIP Liens shall not be (i) subject or subordinate to or made *pari passu* with (A) any lien or security interest that is avoided and preserved for the benefit of the Loan Parties and their estates under section 551 of the Bankruptcy Code, (B) unless otherwise provided for in the DIP Documents or this Interim Order, any liens or security interests arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other foreign or domestic governmental unit (including any regulatory body), commission, board or court for any liability of the Loan Parties, other than the Prepetition ABL Adequate Protection Liens (solely with respect to the ABL Facility Priority Collateral and the ABL Postpetition Collateral) or (C) any intercompany or affiliate liens or security interests of the Loan Parties; or (ii) subordinated to or made *pari passu* with any other lien or security interest under section 363 or 364 of the Bankruptcy Code or otherwise other than the Prepetition ABL Liens and the Prepetition ABL Adequate Protection Liens (solely with respect to the ABL Facility Priority

26

Collateral and the ABL Postpetition Collateral), and except as otherwise permitted pursuant to the DIP Credit Agreement. Until such time as the Control Agreement (as defined below) is terminated or otherwise no longer in effect, the DIP Liens and the Adequate Protection Liens shall not attach to the funds, in the amount not to exceed $2,000,000, pledged to Bank of America, N.A. ("**BofA**"), and deposited in the BofA Account No. XXXXXX5481, pursuant to that certain Treasury Management Services Security and Control Agreement dated as of September 14, 2016 between BofA and Basic (the "**Control Agreement**") as security exclusively for the obligations under that under that certain Bank of America Corporate Purchasing Card Agreement between BofA and Basic Energy Services L.P. dated on or around July 21, 2005 and that certain Commercial Prepaid Card Purchase Agreement between BofA and the Basic dated on our around March 14, 2006 (each as amended, supplemented or modified from time to time, collectively, the "**P-Card Agreements**"); *provided* that the DIP Liens shall attach to the Debtors' interests in such property and to any residual interest after the indefeasible payment in full, in cash, of the Debtors' obligations (excluding any unasserted contingent obligations) and the termination of BofA's obligations under the P-Card Agreements.

      9.     *Protection of DIP Lenders' Rights.*

      (a)    So long as there are any DIP Obligations outstanding (other than contingent indemnity obligations as to which no claim has been asserted when all other DIP Obligations have been indefeasibly paid in full in cash and the Commitments (as defined in the DIP Credit Agreement) have been terminated) or the DIP Lenders have any outstanding Commitments under the DIP Credit Agreement, (i) the Prepetition Term Loan Secured Parties shall: (A) have no right to and shall take no action to foreclose upon, or recover in connection with, the liens granted on the Prepetition Collateral pursuant to the Prepetition Term Loan

RLF1 15549534V.1

Documents or this Interim Order, or otherwise seek to exercise or enforce any rights or remedies against any Collateral or the Prepetition Term Loan Adequate Protection Liens; (B) be deemed to have consented to any transfer, disposition or sale of, or release of liens on, any Collateral (but not any proceeds of such transfer, disposition or sale to the extent remaining after payment in cash in full of the DIP Obligations and termination of the Commitments), to the extent such transfer, disposition, sale or release is authorized under the DIP Documents; (C) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in any Collateral unless, solely as to this clause (C), the DIP Agent or the DIP Lenders file financing statements or other documents to perfect the liens granted pursuant to this Interim Order, or as may be required by applicable state law to continue the perfection of valid and unavoidable liens or security interests as of the Petition Date and (D) deliver or cause to be delivered, at the Debtors' cost and expense, any termination statements, releases and/or assignments in favor of the DIP Agent, the DIP Lenders or other documents necessary to effectuate and/or evidence the release, termination and/or assignment of liens on any portion of any Collateral subject to any sale or disposition; and (ii) the Prepetition Term Loan Agent shall assert its rights under the ICA for the benefit of, and at the direction of, the DIP Lenders.

(b)     Unless and until the DIP Agent, acting at the direction of the Required Lenders (as defined in the DIP Credit Agreement), enforces any of its rights and remedies under the DIP Documents and this Interim Order with respect to the Collateral, or a Borrowing Base Default (as defined below) has occurred and is continuing for a period of more than five (5) days or as otherwise expressly provided in this Interim Order including in paragraph 14(i) below, the Prepetition ABL Secured Parties shall take no action to foreclose upon, or recover in

28

connection with, the liens granted on the ABL Facility Priority Collateral or the ABL Postpetition Collateral pursuant to the Prepetition ABL Loan Documents or this Interim Order, or otherwise seek to exercise or enforce any rights or remedies against any ABL Facility Priority Collateral or the ABL Postpetition Collateral or the Prepetition ABL Adequate Protection Liens; *provided* that, to the extent a Borrowing Base Default has occurred and is continuing for a period of more than five (5) business days, the rights of the Prepetition ABL Secured Parties may be exercised only with respect to ABL Facility Priority Collateral or ABL Postpetition Collateral of an aggregate value not greater than the amount of funds required to cure such Borrowing Base Default, which funds shall be transferred by the Debtors to the ABL Segregated Cash Collateral Account, to the extent the balance in such account is insufficient to cure such Borrowing Base Default as of the date thereof.  Nothing in this Interim Order shall prohibit the Debtors from seeking a determination from the Court at any time that no Out-of-Formula Event (as defined below), Borrowing Base Default, Letter of Credit Default (as defined below) or Event of Default occurred under this Interim Order.

(c)    To the extent any Prepetition Secured Party has possession of any Prepetition Collateral or Collateral or has control with respect to any Prepetition Collateral or Collateral, or has been noted as secured party on any certificate of title for a titled good constituting Prepetition Collateral or Collateral, then such Prepetition Secured Party shall be deemed to maintain such possession or notation or exercise such control as a gratuitous bailee and/or gratuitous agent for perfection for the benefit of the DIP Agent and the DIP Lenders, and the Prepetition Term Loan Agent shall comply with the instructions of the DIP Agent with respect to the exercise of such control.

RLF1 15549534V.1

(d)     The automatic stay provisions of section 362 of the Bankruptcy Code are hereby vacated and modified to the extent necessary to permit the DIP Agent, acting at the direction of the requisite DIP Lenders, and the DIP Lenders to enforce all of their rights under the DIP Documents and this Interim Order and (i) immediately upon the occurrence and during the continuance of an Event of Default, without further order of or application or motion to this Court, declare (A) the termination, reduction or restriction of any further Commitment to the extent any such Commitment remains and (B) all Obligations to be immediately due and payable, without presentment, demand, protest, or other notice of any kind, all of which are expressly waived by the Loan Parties and (ii) upon the occurrence of an Event of Default and the giving of five business days' prior written notice (which shall run concurrently with any notice required to be provided under the DIP Documents) (the "**Remedies Notice Period**") via email to counsel to the Debtors, counsel to the Creditors' Committee, and the U.S. Trustee for the purpose of permitting the DIP Lenders to do any of the following: (x) foreclose on the Collateral (other than the ABL Facility Priority Collateral or the ABL Postpetition Collateral, without the prior written consent of the Prepetition ABL Agent or unless the Prepetition ABL Secured Debt has been paid in full in cash and all Letters of Credit (as defined in the Prepetition ABL Credit Agreement) have been terminated or the Prepetition ABL Debt has been Cash Collateralized in Full (as defined below)) and (y) enforce all of the rights under the DIP Documents (except with respect the ABL Facility Priority Collateral and the ABL Postpetition Collateral, without the prior written consent of the Prepetition ABL Agent or unless the Prepetition ABL Secured Debt has been paid in full in cash and all Letters of Credit (as defined in the Prepetition ABL Credit Agreement) have been terminated or the Prepetition ABL Secured Debt has been Cash Collateralized in Full).  In any hearing on any request to re-impose

30

or continue the automatic stay of section 362(a) of the Bankruptcy Code, the only issue that may be raised by the Debtors or the Prepetition Secured Parties in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing under the DIP Documents, and the Debtors hereby waive their right to and shall not be entitled to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent that such relief would in any way impair or restrict the rights and remedies of the DIP Agent or the DIP Lenders set forth in this Interim Order or the DIP Documents.  In no event shall the DIP Agent, the DIP Lenders or the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral, absent the express written consent of such party.  Further, subject only to and effective upon entry of the Final Order, in no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to the claims of the Prepetition Secured Parties.  For purposes of this Interim Order, the term "Cash Collateralized in Full" means the deposit of cash into the ABL Segregated Cash Collateral Account in an amount equal to 105% of the then outstanding amount of the Prepetition ABL Secured Debt (including, without limitation, the aggregate outstanding face amount of any undrawn Letters of Credit (as defined in the Prepetition ABL Credit Agreement)). In the event the Prepetition ABL Secured Debt is Cash Collateralized in Full, the Debtors shall continue to make the Prepetition ABL Adequate Protection Payments (as defined below) and all other payments set forth in paragraph 14 of this Interim Order.

(e)     No rights, protections or remedies of the DIP Agent or the DIP Lenders granted by the provisions of this Interim Order or the DIP Documents shall be limited, modified or impaired in any way by: (i) any actual or purported withdrawal of the consent of any party to the Loan Parties' authority to continue to use Cash Collateral; (ii) any actual or purported

termination of the Loan Parties' authority to continue to use Cash Collateral; or (iii) the terms of any other order or stipulation related to the Loan Parties' continued use of Cash Collateral or the provision of adequate protection to any party.

10.     *Limitation on Charging Expenses Against Collateral.*   Subject only to and effective upon entry of the Final Order, except to the extent of the Carve-Out, no costs or expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Collateral (including Cash Collateral) pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Agent, the Prepetition Term Loan Agent or the Prepetition ABL Agent, as the case may be and in each case acting at the written direction of the requisite percentage of DIP Lenders, Prepetition Term Loan Lenders or Prepetition ABL Lenders, as applicable, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Agent, the DIP Lenders, the Prepetition ABL Agent, the Prepetition Term Loan Agent or other Prepetition Secured Parties, and nothing contained in this Interim Order shall be deemed to be a consent by the DIP Agent, the DIP Lenders or the Prepetition Secured Parties to any charge, lien, assessment or claim against the Collateral under section 506(c) of the Bankruptcy Code or otherwise.

11.     *Payments Free and Clear.*  Subject only to the Carve-Out, any and all payments or proceeds remitted to the DIP Agent, the Prepetition ABL Agent or the Prepetition Term Loan Agent on behalf of itself and the DIP Lenders, the Prepetition ABL Lenders or the Prepetition Term Loan Lenders, as the case may be, in each case pursuant to the provisions of this Interim

Order or the Final Order or the DIP Documents shall be received free and clear of any claim, charge, assessment or other liability.

12.    *Use of Cash Collateral.*  Subject to the terms and conditions of this Interim Order and the DIP Documents, the Loan Parties are hereby authorized to use Cash Collateral during the period beginning on the Petition Date and ending on the date on which a Termination Event (as defined below) occurs for disbursements set forth in the Rolling Budget (as defined in the DIP Credit Agreement, and as such budget may be modified from time to time by the Loan Parties with the prior written consent of the DIP Agent at the direction of the Required Lenders, as defined in the DIP Credit Agreement) (such initial Rolling Budget, the "**Interim DIP Budget**," attached to the DIP Credit Agreement as **Exhibit G**) and, solely if such modified budget contemplates an Out-of-Formula Event, the Prepetition ABL Agent, subject to any permitted variances as set forth in the DIP Credit Agreement); *provided* that (a) the Prepetition Secured Parties are granted the adequate protection as hereinafter set forth and (b) except on the terms and conditions of this Interim Order, the Loan Parties shall be enjoined and prohibited from at any times using the Cash Collateral absent further order of the Court.  For purposes of this Interim Order, a "**Termination Event**" shall occur with respect to each of the following, if:

> (i)  (A) an Event of Default has occurred, (B) the DIP Agent delivered a notice to the Debtors' lead counsel that an Event of Default has occurred, and (C) the Debtors have not cured such an Event of Default or obtained a ruling from the Bankruptcy Court that no Event of Default has occurred, in each case within five (5) business days following such notice;

(ii)  (A) an event listed in paragraph 17(b) of this Interim Order has occurred, (B) the Prepetition Term Loan Agent or the Prepetition ABL Agent delivered a notice to the Debtors' lead counsel that such an event has occurred, and (C) solely with respect to an event listed in clauses (i) or (ii) of paragraph 17(b), the Debtors have not cured such an event within five (5) business days following such notice (the five day period described in clauses (i) and (ii) above, the "**Cash Collateral Access Grace Period**");

(iii)  a Borrowing Base Default has occurred; or

(iv)  a Letter of Credit Default has occurred.

13.    *Adequate Protection of Prepetition Term Loan Secured Parties.*  The Prepetition Term Loan Secured Parties are entitled, pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including the Cash Collateral, for and equal in amount to the aggregate diminution in the value of the Prepetition Secured Parties' prepetition security interests in all Prepetition Collateral (including Cash Collateral) from and after the Petition Date, if any, for any reason provided for under the Bankruptcy Code, including, without limitation, any such diminution resulting from the depreciation, sale, lease or use by the Loan Parties (or other decline in value) of the Prepetition Collateral, the priming of the Prepetition Term Loan Secured Parties' security interests and liens in the Prepetition Collateral by the DIP Agent and the DIP Lenders pursuant to the DIP Documents and this Interim Order, or the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (the "**Prepetition Term Loan Adequate Protection Claim**"). As adequate protection of the Prepetition Term Loan Adequate Protection Claim, the

34

Prepetition Term Loan Secured Parties are hereby granted the following (collectively, the "**Prepetition Term Loan Adequate Protection Obligations**"):

      (a)    <u>Prepetition Term Loan Secured Parties Adequate Protection Liens</u>. The Prepetition Term Loan Agent (for itself and for the benefit of the Prepetition Term Loan Lenders) is hereby granted (automatically effective and perfected upon the Petition Date and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements), to secure the amount of the Prepetition Term Loan Adequate Protection Claim, a valid, binding, continuing, enforceable, fully perfected security interest in and lien upon all of the Collateral (including, without limitation, Unencumbered Property and, subject to entry of the Final Order, Avoidance Proceeds), subject and subordinate only to: (i) the DIP Liens and any liens to which the DIP Liens are junior (including, without limitation, with respect to the ABL Facility Priority Collateral and the ABL Postpetition Collateral, the Prepetition ABL Liens and the Prepetition ABL Adequate Protection Liens) and (ii) the Carve-Out (the "**Prepetition Term Loan Adequate Protection Liens**").

      (b)    <u>Prepetition Term Loan Secured Parties Section 507(b) Claim</u>. The Prepetition Term Loan Secured Parties are hereby granted, subject to the Carve-Out, an allowed superpriority administrative expense claim as provided for in section 507(b) of the Bankruptcy Code in the amount of the Prepetition Term Loan Adequate Protection Claim with, except as set forth in this Interim Order, priority in payment over any and all administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code (the "**Prepetition Term Loan Secured Parties 507(b) Claim**"). The Prepetition Term Loan Secured Parties 507(b) Claim shall have recourse to and be payable from all of the Collateral including, without limitation, subject to entry of the Final Order, the Avoidance Proceeds. The Prepetition Term

RLF1 15549534V.1

Loan Secured Parties 507(b) Claim shall be (i) subject and subordinate only to (x) the Carve-Out and (y) the DIP Superpriority Claims granted in respect of the DIP Obligations and (ii) *pari passu* with the Prepetition ABL Secured Parties 507(b) Claim (as defined below). Except to the extent expressly set forth in this Interim Order or the DIP Credit Agreement, the Prepetition Term Loan Secured Parties shall not receive or retain any payments, property or other amounts in respect of the Prepetition Term Loan Secured Parties 507(b) Claim unless and until the DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted) and any claims having a priority superior to or *pari passu* with the DIP Superpriority Claims have indefeasibly been paid in full in cash in accordance with the DIP Documents and the Commitments have been terminated. Notwithstanding the foregoing, the Prepetition Term Loan Secured Parties 507(b) Claim shall not be payable from or have recourse to the ABL Facility Priority Collateral or the ABL Postpetition Collateral unless and until the Prepetition ABL Secured Debt has been satisfied in full in cash and all Letters of Credit have been terminated or Cash Collateralized in Full or the ABL Secured Parties have agreed in writing to a different treatment of the Prepetition ABL Secured Debt and all Letters of Credit.

(c)    Prepetition Term Loan Lender Cash Payments. The Prepetition Term Loan Agent shall receive from the Debtors for the benefit of itself and the Prepetition Term Loan Secured Parties, (i) to the extent not already received, upon entry of this Interim Order and receipt of an invoice for such amounts, immediate cash payment of all accrued and unpaid interest on the Prepetition Term Loan Secured Debt at the default rate provided for in the Prepetition Term Loan Documents through the date of entry of this Interim Order and all other accrued and unpaid fees and expenses owing to the Prepetition Term Loan Agent and the Prepetition Term Loan Lenders and, in each case, chargeable and reimbursable under the

Prepetition Term Loan Documents incurred prior to the Petition Date, (ii) cash payments, on the first business day of each month, in an amount equal to the non-default interest payable under the Prepetition Term Loan Credit Agreement, but not including payment of the Applicable Premium; *provided* that the Prepetition Term Loan Lenders reserve the right to assert interest at the default rate; *provided*, further, that the Prepetition Term Loan Lenders shall (x) forbear from exercising such right so long as an Event of Default has not occurred and (y) waive such right upon the Debtors' emergence pursuant to an Acceptable Plan of Reorganization (as defined in the DIP Credit Agreement); *provided, further,* that the payments made under this paragraph 13(c)(ii) shall be without prejudice to the right of any party as to whether such payments constitute postpetition interest allowable under section 506(b) of the Bankruptcy Code or are in respect of principal, and (iii) cash payments of principal in the amount, and on the dates, set forth in section 2.07 of the Prepetition Term Loan Credit Agreement (clauses (i), (ii), and (iii) collectively, the "**Prepetition Term Loan Adequate Protection Payments**").

(d)    Prepetition Term Loan Secured Parties Fees and Expenses.    Without duplication of amounts required to be paid pursuant to the DIP Documents, (i) upon entry of this Interim Order, the Loan Parties shall pay in cash all reasonable and documented out-of-pocket professional fees, expenses and disbursements payable to the advisors to the Prepetition Term Loan Agent (including, without limitation, Lowenstein Sandler LLP) and the Prepetition Term Loan Lenders (including, without limitation, Davis Polk & Wardwell LLP, Potter Anderson & Corroon LLP and PJT Partners) that have accrued as of the Petition Date promptly upon the receipt of invoices therefor and (ii) the Loan Parties shall pay in cash all reasonable and documented out-of-pocket professional fees, expenses and disbursements payable to the advisors to the Prepetition Term Loan Agent (including, without limitation, Lowenstein Sandler

LLP) and the Prepetition Term Loan Lenders (including, without limitation, Davis Polk &

Wardwell LLP, Potter Anderson & Corroon LLP and PJT Partners) that have accrued on or

after the Petition Date. The payment of the fees, expenses and disbursements set forth in clause

(ii) of the foregoing sentence shall be made within ten (10) days (which time period may be

extended by the applicable professional) after the receipt by the Debtors, the Creditors'

Committee and the U.S. Trustee (the "**Term Loan Fees Review Period**") of invoices therefor

(the "**Term Loan Invoiced Fees**") and without the necessity of filing formal fee applications.

The invoices for such Term Loan Invoiced Fees shall include the number of hours billed (except

for financial advisors compensated on other than an hourly basis) and a reasonably detailed

description of services provided and the expenses incurred by the applicable professional;

provided, however, that any such invoice: (i) may be redacted to protect privileged, confidential

or proprietary information and (ii) shall not be required to contain individual time detail

(*provided*, that such invoice shall contain (except for financial advisors compensated on other

than an hourly basis), at a minimum, summary data regarding hours worked by each timekeeper

for the applicable professional and such timekeepers' hourly rates). The Debtors, the Creditors'

Committee and the U.S. Trustee may object to any portion of the Term Loan Invoiced Fees (the

"**Term Loan Disputed Invoiced Fees**") within the Term Loan Fees Review Period by filing

with the Court a motion or other pleading, on at least ten (10) days' prior written notice to the

Prepetition Term Loan Agent and the Prepetition Term Loan Lenders of any hearing on such

motion or other pleading, setting forth the specific objections to the Term Loan Disputed

Invoiced Fees in reasonable narrative detail and the bases for such objections; *provided*, that

payment of any undisputed portion of Term Loan Invoiced Fees shall be paid within the time

frame set forth above and shall not be delayed based on any objections thereto; *provided,*

*further*, that the applicable parties shall endeavor to consensually resolve any such dispute in good faith prior to the filing of any such motion or pleading.

   (e) <u>Adequate Protection Milestones and Covenants</u>.  The Prepetition Term Loan Agent, on behalf of itself and the Prepetition Term Loan Lenders, is hereby entitled to performance of those certain case milestones set forth in section 6.20 of the DIP Credit Agreement and those certain covenants set forth in section 6.07 and section 8.01(k) of the DIP Credit Agreement, in each case as may be waived, amended, modified or extended from time to time by the Required Lenders (as defined in the DIP Credit Agreement) (the "**Adequate Protection Milestones and Covenants**").

   (f) <u>Information Rights</u>.  The Debtors shall promptly provide the Prepetition Term Loan Agent, on behalf of itself and the Prepetition Term Loan Lenders, with all required written financial reporting and other periodic reporting that is provided to the DIP Agent or the DIP Lenders.  In addition, the Prepetition Term Loan Lenders are hereby entitled to the rights set forth in section 6.10(c) of the Prepetition Term Loan Credit Agreement.

   (g) The Adequate Protection Milestones and Covenants and reporting obligations in subparagraphs (e) and (f) above shall survive any termination of the DIP Credit Agreement or the Commitments thereunder.  Following any such termination of the DIP Credit Agreement or the Commitments thereunder, the Adequate Protection Milestones and Covenants may be waived, amended, modified or extended from time to time solely by the Required Lenders (as defined in the Prepetition Term Loan Credit Agreement) in their sole discretion.

  14. *Adequate Protection of Prepetition ABL Secured Parties*.  The Prepetition ABL Secured Parties are entitled, pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the Bankruptcy Code, to adequate protection of their interests in the ABL Facility Priority Collateral,

including the Cash Collateral, for and equal in amount to the aggregate diminution in the value of the Prepetition ABL Secured Parties' prepetition security interests in the ABL Facility Priority Collateral (including Cash Collateral) from and after the Petition Date, if any, for any reason provided for under the Bankruptcy Code, including, without limitation, any such diminution resulting from the depreciation, sale, lease or use by the Loan Parties (or other decline in value) of the ABL Facility Priority Collateral or the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (the "**Prepetition ABL Adequate Protection Claim**" and, together with the Prepetition Term Loan Adequate Protection Claim, the "**Adequate Protection Claims**"). As adequate protection of the Prepetition ABL Adequate Protection Claim, the Prepetition ABL Secured Parties are hereby granted the following (collectively, the "**Prepetition ABL Adequate Protection Obligations**" and, together with the Prepetition Term Loan Adequate Protection Obligations, the "**Adequate Protection Obligations**"):

(a)    <u>Prepetition ABL Secured Parties Adequate Protection Liens</u>.    The Prepetition ABL Agent (for itself and on behalf of the Prepetition ABL Lenders) is hereby granted (automatically effective and perfected upon the Petition Date and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements), to secure the amount of the Prepetition ABL Adequate Protection Claim, a valid, binding, continuing, enforceable, fully perfected first priority security interest in and lien upon all of the ABL Facility Priority Collateral created or acquired on or after the Petition Date (including, all proceeds, products, or profits of such ABL Facility Priority Collateral created or acquired on and after the Petition Date to the extent such proceeds, products or profits themselves constitute ABL Facility Priority Collateral (the "**ABL Postpetition Collateral**")) (the "**Prepetition ABL Adequate Protection Liens**" and, together

with the Prepetition Term Loan Adequate Protection Liens, the "**Adequate Protection Liens**"),
subject and subordinate only to the Carve-Out and valid, perfected and unavoidable liens
existing as of the Petition Date to the extent that such liens are senior to the liens of the
Prepetition ABL Secured Parties on the ABL Postpetition Collateral.  For the avoidance of
doubt, (i) the ABL Postpetition Collateral shall include, without limitation, all accounts
(including unbilled accounts and accounts which constitute proceeds of inventory and are
treated as account receivable on the books of a Loan Party but excluding accounts arising solely
from the sale, lease, license, assignment or other disposition of Term Loan Priority Collateral
other than inventory) of the Borrower and the Guarantors generated on and after the Petition
Date and all proceeds, products or profits of such accounts to the extent such proceeds, products
or profits themselves constitute ABL Facility Priority Collateral, (ii) the Prepetition ABL
Adequate Protection Liens shall be senior in priority to the DIP Liens, the Prepetition Term
Loan Liens and the Prepetition Term Loan Adequate Protection Liens with respect to the ABL
Facility Priority Collateral and the ABL Postpetition Collateral and (iii) there shall be no
Prepetition ABL Adequate Protection Liens on, and there are no Prepetition ABL Liens on, (x)
the Unencumbered Property that is not ABL Postpetition Collateral or (y) the Term Loan
Priority Collateral.

(b)     Prepetition ABL Secured Parties Section 507(b) Claim.  The Prepetition
ABL Secured Parties are hereby granted, subject to the Carve-Out, an allowed superpriority
administrative expense claim as provided for in section 507(b) of the Bankruptcy Code in the
amount of the Prepetition ABL Adequate Protection Claim (the "**Prepetition ABL Secured
Parties 507(b) Claim**" and together with the Prepetition Term Loan Secured Parties 507(b)
Claim, the "**507(b) Claims**").  The Prepetition ABL Secured Parties 507(b) Claim shall have

41

recourse to and be payable from all of the Collateral including, without limitation, subject to entry of the Final Order, the Avoidance Proceeds; provided, however, the Prepetition ABL Secured Parties 507(b) Claim shall be (i) subject and subordinate only to the Carve-Out and the DIP Superpriority Claims granted in respect of the DIP Obligations and (ii) *pari passu* with the Prepetition Term Loan Secured Parties 507(b) Claim. Except to the extent expressly set forth in this Interim Order or the DIP Credit Agreement, the Prepetition ABL Secured Parties shall not receive or retain any payments, property or other amounts solely on account of the Prepetition ABL Secured Parties 507(b) Claim unless and until the DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted) have indefeasibly been paid in full in cash in accordance with the DIP Documents and the Commitments have been terminated.

(c)     Prepetition ABL Lender Cash Payments. The Prepetition ABL Agent shall receive from the Debtors for the benefit of itself and the Prepetition ABL Secured Parties, (i) to the extent not already received, upon entry of this Interim Order and receipt of an invoice for such amounts, immediate cash payment of all accrued and unpaid fees with respect to the Prepetition ABL Secured Debt at the rates provided for in the Prepetition ABL Loan Documents and all other accrued and unpaid fees and expenses owing to the Prepetition ABL Agent and the Prepetition ABL Lenders and, in each case, chargeable and reimbursable under the Prepetition ABL Loan Documents incurred prior to the Petition Date (including, for the avoidance of doubt, payment of all prepetition accrued and unpaid letter of credit fees and commitment fees), (ii) with respect to outstanding Letters of Credit, cash payments, paid on each date and in the manner specified in Section 2.03(h) and Section 2.03(i) of the Prepetition ABL Credit Agreement, in an amount equal to the Letter of Credit Fee (as defined in the Prepetition ABL

42

Credit Agreement and based on the default rate) and the fronting, issuance, presentation, amendment and other processing fees and other standard costs and charges and (iii) cash payment of accrued interest on any "Unreimbursed Amount" (as defined in the Prepetition ABL Credit Agreement) in accordance with paragraph 14(i) of this Interim Order (clauses (i), (ii) and (iii), collectively, the "**Prepetition ABL Adequate Protection Payments**" and, together with the Prepetition Term Loan Adequate Protection Payments, the "**Adequate Protection Payments**").

(d)     Prepetition ABL Secured Parties Fees and Expenses.  (i) Upon entry of this Interim Order, the Loan Parties shall pay in cash all reasonable and documented out-of-pocket professional fees, expenses and disbursements payable to the advisors to the Prepetition ABL Agent (including, without limitation, Vinson & Elkins LLP and Morris, Nichols, Arsht & Tunnell LLP) or any of the Prepetition ABL Lenders that have accrued as of the Petition Date promptly upon the receipt of invoices therefor and (ii) the Loan Parties shall pay in cash all reasonable and documented out-of-pocket professional fees, expenses and disbursements payable to the advisors to the Prepetition ABL Agent (including, without limitation, Vinson & Elkins LLP and Morris, Nichols, Arsht & Tunnell LLP) or any of the Prepetition ABL Lenders that have accrued on or after the Petition Date.  The payment of the fees, expenses and disbursements set forth in clause (ii) of the foregoing sentence shall be made within ten (10) days (which time period may be extended by the applicable professional) after the receipt by the Debtors, the Creditors' Committee and the U.S. Trustee (the "**ABL Fees Review Period**") of invoices therefor (the "**ABL Invoiced Fees**") and without the necessity of filing formal fee applications.  The invoices for such ABL Invoiced Fees shall include the number of hours billed (except for financial advisors compensated on other than an hourly basis) and a reasonably

43

detailed description of services provided and the expenses incurred by the applicable professional; provided, however, that any such invoice: (i) may be redacted to protect privileged, confidential or proprietary information and (ii) shall not be required to contain individual time detail (*provided*, that such invoice shall contain (except for financial advisors compensated on other than an hourly basis), at a minimum, summary data regarding hours worked by each timekeeper for the applicable professional and such timekeepers' hourly rates). The Debtors, the Creditors' Committee and the U.S. Trustee may object to any portion of the ABL Invoiced Fees (the "**ABL Disputed Invoiced Fees**") within the ABL Review Fees Period by filing with the Court a motion or other pleading, on at least ten (10) days' prior written notice to the Prepetition ABL Agent and the Prepetition ABL Lenders of any hearing on such motion or other pleading, setting forth the specific objections to the ABL Disputed Invoiced Fees in reasonable narrative detail and the bases for such objections; *provided*, that payment of any undisputed portion of ABL Invoiced Fees shall be paid within the time frame set forth above and shall not be delayed based on any objections thereto; *provided, further,* that the applicable parties shall endeavor to consensually resolve any such dispute in good faith prior to the filing of any such motion or pleading.

(e)     Information Rights. The Debtors shall provide the Prepetition ABL Secured Parties with all required written financial and other periodic reporting, and shall permit the Prepetition ABL Agent to exercise inspection rights (including conducting a field examination), in each case in accordance with the terms of the Prepetition ABL Loan Documents; provided, however, the Debtors stipulate and agree that a Weekly BBC Trigger Period (as defined in the Prepetition ABL Credit Agreement) is in effect and thus the Debtors shall deliver to the Prepetition ABL Agent a weekly Borrowing Base Certificate (as defined in

the Prepetition ABL Credit Agreement) on the third (3rd) business day after the end of each

calendar week.  In addition, the Debtors shall promptly provide the Prepetition ABL Agent, on

behalf of itself and the other Prepetition ABL Lenders, with copies of all required written

financial reporting and other periodic reporting that is provided to the DIP Agent or the DIP

Lenders including without limitation the variance report required by Section 6.01 (h) of the DIP

Credit Agreement.

(f)    Borrowing Base.    Effective as of the Petition Date, the definition of

Borrowing Base as set forth in the Prepetition ABL Credit Agreement shall be amended and

restated as follows:

> "Borrowing Base" means, on any date of determination, an amount equal to the lesser of (a) $51,062,139; or (b) the sum, without duplication, of the following:
>
> (i)     75% of the Value of Eligible Accounts, plus
>
> (ii)    the lesser of (A) 70% of the Value of Eligible Unbilled Accounts and (B) $25,000,000, minus
>
> (iii)   the Availability Reserve.

If for any reason the Total Outstandings (as defined in the Prepetition ABL Credit Agreement) at

any time exceeds the Borrowing Base at such time (an "**Out-of-Formula Event**"), the Debtors

shall, within five (5) business days after receipt of notice by e-mail from the lead counsel to the

Prepetition ABL Agent to lead counsel to the Debtors, the U.S. Trustee and counsel to the

Prepetition Term Loan Lenders of such Out-of-Formula event, deposit cash into the ABL

Segregated Cash Collateral Account in an aggregate amount equal to such excess.  In the event

the Debtors fail to timely satisfy their obligations under the immediately preceding sentence

(such failure, a "**Borrowing Base Default**"), the Debtors' right to use any Cash Collateral that is

ABL Facility Priority Collateral or ABL Postpetition Collateral shall be automatically terminated

without further notice, application, hearing or order of the Court unless and until such default is cured. The "**ABL Segregated Cash Collateral Account**" means that certain segregated Cash Collateral account, BofA Account No. XXXXXX8520, established with and pledged to the Prepetition ABL Agent (which Cash Collateral and account shall constitute ABL Facility Priority Collateral and ABL Postpetition Collateral for all purposes hereunder), which has a balance of $5.9 million as of the date hereof. The ABL Segregated Cash Collateral Account shall be under the exclusive dominion and control of the Prepetition ABL Agent and the Debtors shall have no right or ability to withdraw or otherwise use the Cash Collateral on deposit therein absent the written consent of the Prepetition ABL Agent.

(g)    Commitments. No commitments to make loans or issue or renew Letters of Credit shall remain in effect under the Prepetition ABL Credit Agreement from and after the Petition Date, and the only obligations of the Prepetition ABL Secured Parties under the Prepetition ABL Credit Agreement after the Petition Date shall be solely with respect to the drawings under Letters of Credit in existence immediately prior to the Petition Date.

(h)    Liability Payments. Subject to entry of an appropriate order of the Court, the Debtors shall continue to pay when due in the ordinary course all claims and liabilities that are supported by any Letter of Credit issued under the Prepetition ABL Credit Agreement.

(i)    Reimbursement. The Debtors shall reimburse the L/C Issuers (under and as defined in the Prepetition ABL Credit Agreement) on the "Honor Date" (as defined therein) in accordance with the terms of Section 2.03(c) of the Prepetition ABL Credit Agreement, including the payment of interest on any unreimbursed amount accrued at a rate per annum equal to the base rate plus 4.25% in accordance with the terms thereof for any payment under a Letter of Credit honored by any of the L/C Issuers (an "**L/C Draw**"). In the event the Debtors

fail to pay the "Unreimbursed Amount" (as defined in the Prepetition ABL Credit Agreement) in full in cash by 11:00 am Central time on the next business day with respect to an L/C Draw as to which the Debtors receive notice before 3:00 pm Central time on the day on which the L/C Draw occurred, then the Prepetition ABL Agent shall be entitled (without further notice, application, hearing or order of the Court) at any time thereafter to apply funds in the ABL Segregated Cash Collateral Account to pay such Unreimbursed Amount, including all applicable accrued and unpaid interest and fees. If the amount of funds in the ABL Segregated Cash Collateral Account is insufficient to pay in full such Unreimbursed Amount, including all applicable accrued and unpaid interest and fees, then within 30 days after the Honor Date, the Prepetition ABL Agent shall be entitled to apply the ABL Facility Priority Collateral and/or the ABL Postpetition Collateral collected and deposited into any deposit account with the Prepetition ABL Agent or any Prepetition ABL Lender to pay any Unreimbursed Amount, including all applicable accrued and unpaid interest and fees. In the event the Unreimbursed Amount remains unsatisfied, including all applicable accrued and unpaid interest and fees, within 40 days after the Honor Date because of the insufficiency of the foregoing two enumerated sources or for any other reason (a "**Letter of Credit Default**"), the Debtors' right to use any Cash Collateral that is ABL Facility Priority Collateral or ABL Postpetition Collateral shall be automatically terminated without further notice, application, hearing or order of the Court. The automatic stay provisions of section 362 of the Bankruptcy Code are hereby vacated and modified to the extent necessary to allow the Prepetition ABL Agent and the Prepetition ABL Lenders to enforce all rights provided for in this paragraph.

15.    *Reservation of Rights of Prepetition Secured Parties.*  Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code,

including section 506(b) thereof, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Secured Parties. Notwithstanding any other provision hereof, the grant of adequate protection to the Prepetition Secured Parties pursuant to this Interim Order is without prejudice to the right of any of the Prepetition Secured Parties upon a change in circumstances to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection and all other parties' rights to contest such request (subject to the ICA); *provided* that any such additional or modified adequate protection (other than the Prepetition ABL Adequate Protection Liens on ABL Facility Priority Collateral and ABL Postpetition Collateral) shall at all times be subordinate and junior to the claims and liens of the DIP Agent and the DIP Lenders granted under this Interim Order and the DIP Documents.

16.    *Perfection of DIP Liens and Adequate Protection Liens.*

(a)    The DIP Agent, the DIP Lenders and the Prepetition Secured Parties are hereby authorized, but not required, to file or record (and to execute in the name of the Loan Parties, as their true and lawful attorneys, with full power of substitution, to the maximum extent permitted by law) financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over cash or securities, notate its name as secured party on any certificates of title for a titled good, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder. Whether or not the DIP Agent, on behalf of the DIP Lenders, the Prepetition ABL Agent, on behalf of the Prepetition ABL Lenders, or the Prepetition Term Loan Agent, on behalf of the Prepetition Term Loan Lenders, shall, in their sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar

RLF1 15549534V.1

instruments, or take possession of or control over any cash or securities, notate its name as secured party on any certificates of title for a titled good, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination (other than as provided in this Interim Order), as of the Petition Date. Upon the request of the DIP Agent, the Prepetition Term Loan Agent, or the Prepetition ABL Agent, each of the Loan Parties, without any further consent of any party, is authorized and directed to take, execute, deliver and file such instruments (in each case, without representation or warranty of any kind) to enable the DIP Agent, the Prepetition Term Loan Agent or the Prepetition ABL Agent to further validate, perfect, preserve and enforce the DIP Liens or the Prepetition Adequate Protection Liens (as the case may be). All such documents will be deemed to have been recorded and filed as of the Petition Date.

(b)     A certified copy of this Interim Order may, in the discretion of the DIP Agent, the Prepetition Term Loan Agent or the Prepetition ABL Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized and directed to accept such certified copy of this Interim Order for filing and/or recording, as applicable. For the avoidance of doubt, the automatic stay provisions of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit the DIP Agent, the Prepetition Term Loan Agent or the Prepetition ABL Agent to take all actions, as applicable, referenced in this subparagraph (b) and the immediately preceding subparagraph (a).

17.    *Preservation of Rights Granted Under This Interim Order.*

(a)    Other than the Carve-Out and other claims and liens expressly granted by this Interim Order, absent the express written consent of the DIP Lenders, the Prepetition Secured Parties and the Debtors, in their sole discretion, no claim or lien having a priority superior to or *pari passu* with those granted by this Interim Order to the DIP Agent and the DIP Lenders or the Prepetition Secured Parties shall be permitted while any of the DIP Obligations or the Adequate Protection Obligations remain outstanding other than valid, perfected and otherwise unavoidable prepetition liens to which the DIP Liens or the Adequate Protection Obligations, as applicable, are subject and subordinate pursuant to this Interim Order, and, except as otherwise expressly provided in paragraphs 8 or 13(a) of this Interim Order, the DIP Liens and the Adequate Protection Liens shall not be: (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Loan Parties' estates under section 551 of the Bankruptcy Code; (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise; (iii) subordinated to or made *pari passu* with any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other domestic or foreign governmental unit (including any regulatory body), commission, board or court for any liability of the Loan Parties; or (iv) subject or junior to any intercompany or affiliate liens or security interests of the Loan Parties.

(b)    If (A) any of the Loan Parties, without the prior written consent of the Required Lenders (as defined in each of the DIP Credit Agreement, the Prepetition Term Loan Credit Agreement and the Prepetition ABL Agreement) and, in addition, solely with respect to (iii) below, the Prepetition Term Loan Agent and the DIP Agent, seeks, proposes or supports

50

(whether by way of motion or other pleadings filed with the Court or any other writing executed by any Loan Party or by oral argument), or if there is entered or confirmed (in each case, as applicable), or if there occurs:

(i)    a failure of the Debtors to make any payment under this Interim Order to any of the Prepetition Secured Parties when due;

(ii)    a failure of the Debtors to (x) observe or perform any of the material terms or provisions contained in this Interim Order or (y) comply with any covenant or agreement in this Interim Order in any material respect;

(iii)    any modifications, amendments, reversal or extensions of this Interim Order, and no such consent shall be implied by any other action, inaction or acquiescence by any party;

(iv)    an order converting or dismissing any of the Cases;

(v)    an order appointing a chapter 11 trustee in the Cases;

(vi)    an order appointing an examiner with enlarged powers in the Cases (beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code);

(vii)    a plan of reorganization other than an Acceptable Plan of Reorganization (as defined in the DIP Credit Agreement) or confirmation thereof;

(viii)    confirmation of a plan that does not provide for the indefeasible payment in full in cash of the Prepetition ABL Secured Debt and termination of all Letters of Credit, or such other treatment of the Prepetition ABL Secured Debt and all Letters of Credit as may be agreed to in writing by the Debtors and the Prepetition ABL Agent;

(ix)    the sale of all or substantially all of the assets of the Loan Parties (except to the extent permitted under the DIP Documents), which does not provide for the repayment in full in cash of all DIP Obligations (other than any contingent indemnification or expense reimbursement obligations for which no claim has been made) and for the indefeasible payment in full in cash of the Prepetition ABL Secured Debt and termination of all Letters of Credit or for the Prepetition ABL Secured Debt to be Cash Collateralized in Full upon the consummation thereof, or such other treatment of the Prepetition ABL Secured Debt and all Letters of Credit as may be agreed to by the Debtors and the Prepetition ABL Agent; or

RLF1 15549534V.1

(x)    a failure of the Debtors to pay in full in cash the Prepetition ABL Secured Debt and to terminate all Letters of Credit, or provide such other treatment of the Prepetition ABL Secured Debt as may be agreed to in writing by the Debtors and the Prepetition ABL Agent by the Maturity Date (as defined in the DIP Credit Agreement);

(B) the Prepetition Term Loan Credit Agent or the Prepetition ABL Agent delivers to the Debtors' lead counsel notice that one of the events set forth above has occurred; and (C) solely with respect to clauses (i) and (ii) above, the Debtors fail to cure such an event during the Cash Collateral Grace Period, then a Termination Event under this Interim Order shall occur. Notwithstanding any order that may be entered dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered:  (i) the DIP Superpriority Claims, the 507(b) Claims, the DIP Liens and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all DIP Obligations and Adequate Protection Obligations shall have been indefeasibly paid in full in cash (and that such DIP Superpriority Claims, 507(b) Claims, DIP Liens and Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest); (ii) the other rights granted by this Interim Order shall not be affected; and (iii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph and otherwise in this Interim Order. Notwithstanding anything to the contrary in this paragraph 17(b) or elsewhere in this Interim Order, the Debtors shall have the right, regardless of whether an Event of Default under this Interim Order has occurred, or whether a Cash Collateral Access Grace Period has commenced and is continuing, to seek non-consensual use of Cash Collateral of the Prepetition Secured Parties (whether by way of motion or other pleadings filed with the Court, or any other writing executed by any loan Party, or by oral argument).

52

(c)     If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect: (i) the validity, priority or enforceability of any DIP Obligations or Adequate Protection Obligations incurred prior to the actual receipt of written notice by the DIP Agent, the Prepetition ABL Agent or the Prepetition Term Loan Agent, as applicable, of the effective date of such reversal, modification, vacation or stay; or (ii) the validity, priority or enforceability of the DIP Liens or the Adequate Protection Liens.  Notwithstanding any such reversal, modification, vacation or stay of any use of Cash Collateral, any DIP Obligations, DIP Liens, Adequate Protection Obligations or Adequate Protection Liens incurred by the Loan Parties to the DIP Agent, the DIP Lenders or the Prepetition Secured Parties, as the case may be, prior to the actual receipt of written notice by the DIP Agent, the Prepetition ABL Agent or the Prepetition Term Loan Agent, as applicable, of the effective date of such reversal, modification, vacation or stay shall be governed in all respects by the original provisions of this Interim Order, and the DIP Agent, the DIP Lenders and the Prepetition Secured Parties shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Interim Order and the DIP Documents with respect to all uses of Cash Collateral, DIP Obligations and Adequate Protection Obligations.

(d)     Except as expressly provided in this Interim Order or in the DIP Documents, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the 507(b) Claims and the Adequate Protection Obligations and all other rights and remedies of the DIP Agent, the DIP Lenders and the Prepetition Secured Parties granted by the provisions of this Interim Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by: (i) the entry of an order converting any of the Cases to a case under chapter 7,

dismissing any of the Cases, terminating the joint administration of the Cases or by any other act or omission; (ii) the entry of an order approving the sale of any Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Documents); or (iii) the entry of an order confirming a chapter 11 plan in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Loan Parties have waived any discharge as to any remaining DIP Obligations or Adequate Protection Obligations. The terms and provisions of this Interim Order and the DIP Documents shall continue in the Cases, in any successor cases if the Cases cease to be jointly administered and in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Obligations and the 507(b) Claims and all other rights and remedies of the DIP Agent, the DIP Lenders and the Prepetition Secured Parties granted by the provisions of this Interim Order and the DIP Documents shall continue in full force and effect until the DIP Obligations and the Adequate Protection Obligations are indefeasibly paid in full in cash, as set forth herein and in the DIP Documents, and the Commitments have been terminated.

18. *Effect of Stipulations on Third Parties.* The Debtors' stipulations, admissions, agreements and releases contained in this Interim Order, including, without limitation, in paragraph 4 of this Interim Order, shall be binding upon the Debtors and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors) in all circumstances and for all purposes. The Debtors' stipulations, admissions, agreements and releases contained in this Interim Order, including, without limitation, in paragraph 4 of this Interim Order, shall be binding upon all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or

RLF1 15549534V.1

formed in the Cases (including the Creditors' Committee, if any) and any other person or entity

acting or seeking to act on behalf of the Debtors' estates, including any chapter 7 or chapter 11

trustee or examiner appointed or elected for any of the Debtors, in all circumstances and for all

purposes unless: (a) such committee or any other party in interest (subject in all respects to any

agreement or applicable law that may limit or affect such entity's right or ability to do so), in

each case, with requisite standing granted by the Court, has timely filed an adversary proceeding

or contested matter (subject to the limitations contained herein, including, *inter alia*, in this

paragraph 18) by no later than (i) (x) with respect to parties in interest other than the Creditors'

Committee, 75 calendar days after entry of this Interim Order and (y) with respect to the

Creditors' Committee, 60 calendar days after the appointment of the Creditors' Committee, if

any, (ii) any such later date as has been agreed to, in writing, by the Prepetition ABL Agent (with

the consent of the Required Lenders (as defined in the Prepetition ABL Credit Agreement)) and

the Prepetition Term Loan Agent (with the consent of the Required Lenders (as defined in the

Prepetition Term Loan Credit Agreement)), as applicable, and (iii) any such later date as has

been ordered by the Court for cause upon a motion filed and served within any applicable period

of time set forth in this paragraph (the time period established by the foregoing clauses (i), (ii),

and (iii), the "**Challenge Period**"), <u>provided</u>, if the Creditors' Committee or any other party in

interest (i) seeks standing with respect to a Challenge (as defined below) prior to the expiration

of the Challenge Period and (ii) attaches the proposed complaint (the "**Proposed Complaint**")

for which it seeks standing to its motion seeking standing, the Challenge Period, solely with

respect to (A) the Challenges set forth with specificity in the Proposed Complaint and (B) the

party seeking standing with respect to such Challenges, shall be extended until the earliest of (x)

the date such motion seeking standing is withdrawn, (y) if the Court enters an order denying such

motion seeking standing with respect to any such Challenges, the date of entry of such order for such affected Challenges, or (z) if the Court enters an order granting such motion seeking standing with respect to any such Challenges, two (2) business days after entry of such order for such affected Challenges, (A) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Secured Debt or the Prepetition Liens, or (B) otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "**Challenges**") against the Prepetition Secured Parties or their respective subsidiaries, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such (each a "**Representative**" and, collectively, the "**Representatives**") in connection with matters related to the Existing Agreements, the Prepetition Secured Debt, the Prepetition Liens and the Prepetition Collateral; and (b) there is a final non-appealable order in favor of the plaintiff sustaining any such Challenge in any such timely filed adversary proceeding or contested matter; provided, however, that any pleadings filed in connection with any Challenge shall set forth with specificity the basis for such challenge or claim and any challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever, waived, released and barred.  If no such Challenge is timely and properly filed during the Challenge Period or the Court does not rule in favor of the plaintiff in any such proceeding then: (a) the Debtors' stipulations, admissions, agreements and releases contained in this Interim Order, including, without limitation, those contained in paragraph 4 of this Interim Order, shall be binding on all parties in interest, including, without limitation, the

Creditors' Committee; (b) the obligations of the Loan Parties under the Existing Agreements, including the Prepetition Secured Debt, shall constitute allowed claims not subject to defense, claim, counterclaim, recharacterization, subordination, offset or avoidance, for all purposes in the Cases, and any subsequent chapter 7 case(s); (c) the Prepetition Liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to recharacterization, subordination (except as provided in the ICA or with respect to valid, perfected and otherwise unavoidable prepetition liens to which such Prepetition Liens are subject and subordinate), avoidance or other defense; and (d) the Prepetition Secured Debt and the Prepetition Liens on the Prepetition Collateral shall not be subject to any other or further claim or challenge by the Creditors' Committee, any non-statutory committees appointed or formed in the Cases or any other party in interest acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors) and any defenses, claims, causes of action, counterclaims and offsets by the Creditors' Committee, any non-statutory committees appointed or formed in the Cases, or any other party acting or seeking to act on behalf of the Debtors' estates , including, without limitation, any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors), whether arising under the Bankruptcy Code or otherwise, against any of the Prepetition Secured Parties and their Representatives arising out of or relating to any of the Existing Agreements shall be deemed forever waived, released and barred. If any such Challenge is timely filed during the Challenge Period, the stipulations, admissions, agreements and releases contained in this Interim Order, including, without limitation, those contained in paragraph 4 of this Interim Order, shall

nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any statutory or nonstatutory committee appointed or formed in the Cases, including the Creditors' Committee, and on any other person or entity, except to the extent that such stipulations, admissions, agreements and releases were expressly and successfully challenged in such Challenge as set forth in a final, non-appealable order of a court of competent jurisdiction. Nothing in this Interim Order vests or confers on any Person (as defined in the Bankruptcy Code), including the Creditors' Committee or any non-statutory committees appointed or formed in the Cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, Challenges with respect to the Existing Agreements, the Prepetition Secured Debt or the Prepetition Liens.

19.    *Limitation on Use of DIP Financing Proceeds and Collateral.*  Notwithstanding anything herein or in any other order by this Court to the contrary, no DIP Loans, Cash Collateral, Collateral, Prepetition Collateral, proceeds of any of the foregoing or the Carve-Out may be used: (a) for professional fees and expenses incurred for (i) any litigation or threatened litigation (whether by contested matter, adversary proceeding or otherwise, including any investigation in connection with litigation or threatened litigation) against any of the DIP Agent, the DIP Lenders or the Prepetition Secured Parties or for the purpose of objecting to or challenging the amount, validity, perfection, enforceability, extent or priority of any claim, lien or security interest held or asserted by any of the DIP Agent, the DIP Lenders or the Prepetition Secured Parties or (ii) asserting any defense, claim, cause of action, counterclaim, or offset with respect to the DIP Obligations, the Prepetition Secured Debt, including, without limitation, any obligations arising from or related to the Applicable Premium (as defined in the Prepetition Term Loan Credit Agreement) (including, without limitation, for lender liability or pursuant to section

58

105, 510, 544, 547, 548, 549, 550 or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise), the DIP Liens or the Prepetition Liens or against any of the DIP Agent, the DIP Lenders, Prepetition Secured Parties or their respective Representatives; (b) to prevent, hinder or otherwise delay any of the DIP Agent's or the Prepetition Secured Parties' assertion, enforcement or realization on the Prepetition Collateral or the Collateral in accordance with the DIP Documents, the Existing Agreements or this Interim Order other than to seek a determination that an Event of Default has not occurred or is not continuing; (c) to seek to modify any of the rights granted to the DIP Agent, the DIP Lenders or the Prepetition Secured Parties under this Interim Order or under the DIP Documents or the Existing Agreements, in each of the foregoing cases without such parties' prior written consent, which may be given or withheld by such party in the exercise of its respective sole discretion, subject to any applicable terms of the ICA, if any; or (d) pay any amount on account of any claims arising prior to the Petition Date unless such payments are (i) approved by an order of this Court (including, without limitation, hereunder) and (ii) permitted under the DIP Documents; *provided* that, notwithstanding anything to the contrary herein, no more than an aggregate of $50,000 (the "**Investigation Fund**") may be used for allowed fees and expenses incurred solely by the Creditors' Committee during the Challenge Period to investigate the claims and liens of the Prepetition Secured Parties; *provided, further*, that no portion of the Investigation Fund may be used for fees and expenses incurred to litigate, contest, initiate, assert, join, commence, support or prosecute any Challenges.

20.     *Loss or Damage to Collateral.* Nothing in this Interim Order, the DIP Documents, or any other documents related to these transactions shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, any DIP Lender or any of the Prepetition

Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their business, or in connection with their restructuring efforts. So long as the DIP Agent and the DIP Lenders comply with their obligations under the DIP Documents and their obligations, if any, under applicable law (including the Bankruptcy Code), (a) the DIP Agent and the DIP Lenders shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person and (b) all risk of loss, damage or destruction of the Collateral shall be borne by the Loan Parties.

21.    *Reservation of Rights Under the ICA.*  Except as expressly provided in this Interim Order, nothing in this Interim Order shall amend modify or otherwise waive the terms or provisions of the ICA.

22.    *Interim Order Governs.*  In the event of any inconsistency between the provisions of this Interim Order, the DIP Documents or any other order entered by this Court, the provisions of this Interim Order shall govern.  Notwithstanding anything to the contrary in any other order entered by this Court, any payment made pursuant to any authorization contained in any other order entered by this Court shall be consistent with and subject to the requirements set forth in this Interim Order and the DIP Documents, including, without limitation, the Interim DIP Budget.

23.    *Binding Effect; Successors and Assigns.*  The DIP Documents and the provisions of this Interim Order, including all findings herein (subject to paragraph 18 hereof, if applicable) shall be binding upon all parties in interest in the Cases, including, without limitation, the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, the Creditors' Committee, any non-

statutory committees appointed or formed in the Cases, the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Agent, the DIP Lenders, the Prepetition Secured Parties and the Debtors and their respective successors and assigns; provided, however, that the DIP Agent, the DIP Lenders and the Prepetition Secured Parties shall have no obligation to permit the use of the Prepetition Collateral (including Cash Collateral) or to extend any financing to any chapter 7 trustee, chapter 11 trustee or similar responsible person appointed for the estates of the Debtors.

24.    *Limitation of Liability.*  In determining to make any loan or other extension of credit under the DIP Credit Agreement, to permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Documents, the DIP Agent, the DIP Lenders and the Prepetition Secured Parties shall not (i) be deemed to be in "control" of the operations of or participating in the management of the Debtors; (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates; and (iii) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601, et seq., as amended, or any similar federal or state statute).

25.    *Release of Term Loan Escrowed Funds.*  Upon entry of the Final Order consented to by the Prepetition Term Loan Lenders, the Prepetition Term Loan Agent and Prepetition Term Loan Lenders consent to release of all funds held in the Escrow Account (as defined in the

RLF1 15549534V.1

Prepetition Term Loan Escrow Agreement) (the "**Term Loan Escrow Funds**") and transfer of such funds to the Term Loan Proceeds Collateral Account (as defined in the Prepetition Term Loan Credit Agreement), which Term Loan Escrow Funds that consist of proceeds of the loans made under the Prepetition Term Loan Credit Agreement on February 26, 2016 shall be treated as obligations of the Debtors under the Prepetition Term Loan Credit Agreement. Pursuant to the ICA, the Term Loan Escrow Funds shall be excluded from the ABL Facility Priority Collateral and no Prepetition ABL Adequate Protection Liens granted to the Prepetition ABL Agent shall be granted with respect to the Term Loan Escrow Funds.

26.     *Master Proof of Claim.*  Neither the Prepetition ABL Agent nor the Prepetition Term Loan Agent shall be required to file proofs of claim in the Cases or any successor case in order to assert claims on behalf of itself and the Prepetition Secured Parties for payment of the Prepetition Secured Debt arising under the Existing Agreements including, without limitation, any principal, unpaid interest, fees, expenses and other amounts.  The statements of claim in respect of the Prepetition Secured Debt set forth in this Interim Order, together with any evidence accompanying the Motion and presented at the Interim Hearing, are deemed sufficient to and do constitute proofs of claim in respect of such debt and such secured status.  However, in order to facilitate the processing of claims, to ease the burden upon the Court and to reduce an unnecessary expense to the Debtors' estates, the Prepetition ABL Agent and the Prepetition Term Loan Agent are each authorized, but not directed, to file in the Debtors' lead chapter 11 case *In re Basic Energy Services, Inc., et al.,* Case No. 16-12320 (KJC), a single, master proof of claim on behalf of itself and the Prepetition Term Loan Secured Parties and the Prepetition ABL Secured Parties, as applicable, on account of any and all of their respective claims arising under the Existing Agreements and hereunder (the "**Master Proof of Claim**") against each of the

Debtors.  Upon the filing of the Master Proof of Claim against each of the Debtors, (i) the Prepetition ABL Agent and the other Prepetition ABL Secured Parties and (ii) the Prepetition Term Loan Agent and the other Prepetition Term Loan Secured Parties, and each of their respective successors and assigns, shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claims against each of the Debtors of any type or nature whatsoever with respect to the Existing Agreements and the claim of each Prepetition Secured Party (and each of its respective successors and assigns), named in the Master Proof of Claim shall be treated as if such entity had filed a separate proof of claim in each of these Cases. Neither the Prepetition ABL Agent nor the Prepetition Term Loan Agent shall be required to identify whether any Prepetition Secured Party acquired its claim from another party and the identity of any such party or to amend the Master Proof of Claim to reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from the transfer of all or any portion of such claims.  The provisions of this paragraph 26 and the Master Proof of Claim are intended solely for the purpose of administrative convenience and shall not affect the right of each Prepetition Secured Party (or its successors in interest) to vote separately on any plan proposed in these Cases.  Neither the Prepetition ABL Agent nor the Prepetition Term Loan Agent shall be required to attach any instruments, agreements or other documents evidencing the obligations owing by each of the Debtors to the Prepetition Secured Parties, which instruments, agreements or other documents will be provided upon written request to counsel to the Prepetition ABL Agent and the Prepetition Term Loan Agent, as applicable.

27.  *Insurance*.  To the extent that the Prepetition Term Loan Agent is listed as loss payee under the Borrower's or Guarantors' insurance policies, the DIP Agent is also deemed to

be the loss payee under such insurance policies and shall act in that capacity and distribute any proceeds recovered or received in respect of any such insurance policies, first, subject to the Carve-Out, to the payment in full of the DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted), and second, to the payment of the Prepetition Secured Debt.

28.    *Effectiveness*.  This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable nunc pro tunc to the Petition Date immediately upon entry hereof.   Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any Local Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

29.    *Headings*.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

30.    *Payments Held in Trust*.  Except as expressly permitted in this Interim Order or the DIP Documents, in the event that any person or entity receives any payment on account of a security interest in Collateral, receives any Collateral or any proceeds of Collateral or receives any other payment with respect thereto from any other source prior to indefeasible payment in full in cash of all DIP Obligations under the DIP Documents, and termination of the Commitments in accordance with the DIP Documents, such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds of Collateral in trust for the benefit of the DIP Agent and the DIP Lenders and shall immediately turn over such proceeds to the DIP Agent, or as otherwise instructed by this Court, for application in accordance with the DIP

Documents and this Interim Order *provided*, that the foregoing shall not apply to the receipt of ABL Facility Priority Collateral or ABL Postpetition Collateral (or any proceeds thereof to the extent constituting ABL Facility Priority Collateral or ABL Postpetition Collateral) by any Prepetition ABL Secured Party on account of its security interest in ABL Facility Priority Collateral or ABL Postpetition Collateral.

31.    *Credit Bidding.*  (a) The DIP Agent shall, acting at the direction of the Required Lenders, have the right to credit bid, in accordance with the DIP Documents, up to the full amount of the DIP Obligations in any sale of the Collateral, (b) subject to the ICA, the Prepetition Term Loan Agent shall, acting at the direction of the requisite Prepetition Term Loan Secured Parties, have the right to credit bid up to the full amount of the Prepetition Term Loan Secured Debt in any sale of the Collateral, in the case of the Prepetition Term Loan Secured Debt and (c) subject to the ICA, the Prepetition ABL Agent shall, acting at the direction of the requisite Prepetition ABL Secured Parties, have the right to credit bid the full amount of the Prepetition ABL Secured Debt in any sale of the ABL  Facility Collateral or ABL Postpetition Collateral, in the case of Prepetition ABL Secured Debt as provided for in section 363(k) of the Bankruptcy Code, and in each case without the need for further Court order authorizing the same and whether any such sale is effectuated through section 363(k) or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

32.    *Bankruptcy Rules.*  The requirements of Bankruptcy Rules 4001, 6003 and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

33.    *Necessary Action.*  The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Interim Order.

RLF1 15549534V.1

34.    *Retention of Jurisdiction.*    The Court shall retain jurisdiction to enforce the provisions of this Interim Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for any one or more of the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

35.    *Final Hearing.*    The Final Hearing is scheduled for November 18, 2016 at 11:00 a.m. (prevailing Eastern Time) before this Court.

36.    *Objections.*    Responses or objections, if any, to the relief sought at the Final Hearing must be (i) in writing; (ii) signed by counsel or attested to by the objecting party; (iii) in conformity with the Bankruptcy Rules and the Local Bankruptcy Rules; (iv) filed with the Clerk of the United States Bankruptcy Court for the District of Delaware and (v) served on: (a) the Debtors, 801 Cherry Street, Suite 2100, Fort Worth, TX 76102, Attn.: T. M. "Roe" Patterson and Alan Krenek; (b) proposed counsel to the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153-0119, Attn: Ray Schrock, P.C. and Ronit Berkovich; (c) proposed local counsel to the Debtors, Richards, Layton & Finger, P.A., 920 North King Street, Wilmington, Delaware 19801, Attn: Daniel J. DeFranceschi and Michael J. Merchant; (d) counsel to any statutory committee appointed in these cases; (e) Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801; (f) counsel to the Prepetition Term Loan Lenders and certain of the DIP Lenders, (x) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017, Attn: Marshall S. Huebner and Darren S. Klein, and (y) Potter Anderson & Corroon LLP, 1313 North Market Street, 6th Floor, Wilmington, Delaware, Attn: Jeremy W. Ryan; (g) counsel to the Prepetition Term Loan Agent and the DIP Agent, Lowenstein Sandler LLP, 1251 Avenue of the

Americas, New York, New York 10020, Attn: Theodore Sica, and Lowenstein Sandler LLP, 65 Livingston Avenue, Roseland, New Jersey 07068, Attn.: Nicholas B. Vislocky; (h) counsel to the Prepetition ABL Agent, (x) Vinson & Elkins LLP, 2001 Ross Avenue, Suite 3700, Dallas, TX 75201-2975, Attn: James A. Markus and Paul E. Heath and (y) Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market Street, Wilmington, DE 19801, Attn.: Robert J. Dehney and Eric D. Schwartz; (i) counsel to the Ad Hoc Group, (x) Fried, Frank, Harris, Shriver & Jacobson LLP, One New York Plaza, New York, NY 10004, Attn: Brad Eric Scheler and Peter Siroka and (y) Blank Rome LLP, 1201 N. Market Street Suite 800, Wilmington, DE 19801, Attn.: Michael D. DeBaecke and (j) any other party that has filed a request for notices with this Court, in each case to allow actual receipt by the foregoing no later than ___Nov. 10___, 2016 at 4:00 p.m., prevailing Eastern Time.

37.    *Service*.  The Debtors shall serve copies of this Interim Order within 48 hours of its entry (which shall constitute adequate notice of the Final Hearing, including, without limitation, notice that the Debtors will seek approval at the Final Hearing of a waiver of rights under sections 506(c) and 552(b) of the Bankruptcy Code) to the parties having been given notice of the Interim Hearing, to any party that has filed a request for notices with this Court and to the Creditors' Committee after the same has been appointed, or such Creditors' Committee's counsel, if the same shall have been appointed.

Dated:    October 26, 2016
          Wilmington, Delaware

                              _____
                              THE HONORABLE KEVIN J. CAREY
                              UNITED STATES BANKRUPTCY JUDGE